DECISION
This matter is before the Court on a motion for sanctions filed by the defendant, Buchanan for President Committee (committee), against counsel for the plaintiff, Zbigniew Maciszewski (plaintiff). The pertinent facts, as gleaned from the record, follow.
On or about March 9, 1992, the committee sponsored a speech and press conference at the Sheraton Tara Hotel (hotel) in Warwick, Rhode Island, at which the featured speaker was presidential candidate Patrick Buchanan (Buchanan). Among those in attendance were various media and campaign personnel, including one Susan Berge Kent (Kent), a volunteer and personal contributor to the campaign. Buchanan arrived at approximately seven o'clock in the evening and spoke and fielded questions for about one hour. After that, Kent and other Buchanan supporters retired to the lounge to discuss the campaign. Sometime around 9:30 p.m., Kent left the hotel and proceeded north on Interstate 95, presumably on her way home. The plaintiff was traveling along the same route when Kent's car allegedly collided with his vehicle, causing a horrible accident. The plaintiff suffered numerous and severe personal injuries. He subsequently filed separate legal actions against Kent, the hotel, the State of Rhode Island, and the committee.
The original complaint, filed on April 30, 1993 against the committee, alleged that agents of the committee provided alcohol to Kent, witnessed her inebriation, and then negligently allowed her to operate a motor vehicle upon leaving the hotel. However, the complaint also contained several obvious inaccuracies. Specifically, it was alleged that the committee "owned and/or operated" the hotel and that the committee "held a common victualer liquor license." The committee filed a motion for summary judgment on June 24, 1993. At a hearing held on August 10, 1993, the motion justice determined that the committee's motion was premature since the parties had not yet begun the discovery process. Consequently, the motion justice denied the committee's summary judgment motion "without prejudice to [the committee] bringing it again."
For the next several months, the parties exchanged discovery documents. In December of 1993, the committee filed a second motion for summary judgment and included a request for attorney's fees. In March of 1994, a different motion justice denied the summary judgment motion and refused to award the committee attorney's fees.
The plaintiff then tried unsuccessfully to amend the original complaint in August and September of 1995. The record fails to reflect any activity on either motion, except for a notation on the Superior Court docket sheet indicating that the latter motion to amend was "not filed timely." Nevertheless, plaintiff persisted on his motion to amend and, on October 6, 1995, the motion was granted. In the amended complaint, plaintiff retracted his claim that the committee "owned and/or operated" the hotel and that the committee maintained a liquor license. He also dropped the allegation that agents of the committee had served alcohol to Kent on the night in question. Rather, plaintiff contended that Kent was either expressly or implicitly invited to the event by the committee, that agents of the committee drank alcohol with Kent, and that they failed in their "duty to use reasonable efforts to adequately supervise" her by allowing her to "negligently operate a motor vehicle" despite observing her to be visibly intoxicated. The plaintiff also alleged that the collision between Kent and plaintiff was "proximately caused by the negligence of the [d]efendant [c]ommittee in supervising their agent after the officers of the committee knew that she had become visibly intoxicated at an event they sponsored and invited her to."
On August 23, 1996 the committee filed a motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure or, in the alternative, for summary judgment. On September 26, 1996 plaintiff filed a motion to further amend the complaint.[1] On December 4, 1996 the motion justice granted the committee's summary judgment motion and awarded the committee its costs. On January 24, 1997 the committee filed the present motion for sanctions.
In its memorandum, the committee rests its claim for sanctions on Rule 11 of the Superior Court Rules of Civil Procedure. Specifically, the committee points to the original complaint and notes that "[i]t was clear right from the very beginning that [p]laintiff and [p]laintiff's counsel had no evidence to support the allegation that the [c]ommittee served alcoholic beverages to anyone, including Ms. Kent on the evening in question." Further, the committee maintains that plaintiffs counsel "signed and filed a complaint which was replete with patently false allegations," and at several hearings "withheld, ignored, and misrepresented facts known to them even prior to filing suit which, if disclosed, would have been fatal to [p]laintiff's claims against the [c]ommittee." Thus, the committee seeks to recover attorney's fees incurred in defending this suit and any other relief that appears just and proper.
Because the committee has limited its claim for relief to those remedies available under Rule 11, this Court will not address the potential for sanctions pursuant to any other rule or statute. Further, the Court finds that plaintiffs counsel is not subject to sanctions under Rule 11 and, as such, the committee is not entitled to receive attorney's fees or any other relief.
The motion justice granted plaintiffs request to amend the original pleading in October of 1995. Rule 15(a) of the Superior Court Rules of Civil Procedure, as amended on September 5, 1995, reads in pertinent part:
 "Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."
It is well settled that "the filing of an amended complaint supersedes for many purposes the original complaint." Hall v.Insurance Company of North America, 666 A.2d 805, 806 (R.I. 1995); see also, Conway v. Marsh, 79 R.I. 254, 255,87 A.2d 499, 500 (1952) ("the filing of an amended declaration eliminates the original declaration.") Moreover, when an amended complaint is filed, the original complaint ceases to be part of the record, and may only be used for certain purposes such as a judicial admission or to establish the date upon which the action was commenced. E.g., Hall, 666 A.2d at 806 (citing cases); Smithv. Golden, 92 R.I. 446, 449, 169 A.2d 912, 914 (1961).
In the present case, the original complaint alleged that the committee, as owners and operators of the hotel and holders of a liquor license, negligently served alcohol to Kent, thereby leading to her intoxication and subsequent automobile accident. There was no claim that Kent was an agent of the committee. Under such circumstances, the committee's potential liability apparently would be based on Rhode Island's liquor liability statute for the negligent or reckless service of alcohol by the committee's agents. See, G.L. 1956 § 3-14-6 and § 3-14-7. On the other hand, the allegations set forth in the amended complaint charge members of the committee with failing to adequately supervise Kent, an agent of the committee and invitee to the event, after witnessing her drunkenness. Thus, the underlying theory of recovery, while still rooted in negligence, is apparently based on the doctrine of respondeat superior in that members of the committee were engaged in committee business while sitting in the lounge and witnessing Kent become inebriated and were under a duty, on behalf of the committee, to adequately supervise her actions.
It is undisputed that plaintiff filed the amended complaint more than three years after the date of the accident and outside the applicable statute-of-limitations period. Therefore, in order to toll the three-year statute of limitations and have the later negligence action relate back to the date of the original complaint, plaintiff must meet the requirements of Rule 15(c).See, Manocchia v. Narragansett Capital Partners TelevisionInvestments, 658 A.2d 907, 909 (R.I. 1995). Rule 15(c), as amended on September 5, 1995, reads in pertinent part:
 "Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."
It is important to note that although plaintiff has sought to change the theory of liability in the amended complaint, the later pleading still may relate back to the date of the original complaint. See, Manocchia, 658 A.2d at 910 ("[a]n interpretation of Rule 15(c) * * * favors the application of the relation-back principle to an amendment even if it changes the theory of recovery or the type of relief sought." (emphasis in original)). The only requirement at this juncture is "an identity of the conduct, transaction, or occurrence" between the actions giving rise to the allegations set forth in the original complaint and those claims delineated in the amended version.Id.
The Rhode Island Supreme Court has set forth a test to be applied in determining whether the relation-back rule applies to an amended complaint that adds a new theory of liability. InMainella v. Staff Builders Industrial Services, Inc.,608 A.2d 1141 (R.I. 1992), the Supreme Court stated that:
 "the standard for establishing whether an amendment qualifies under Rule 15(c) is both an identity-of-transaction test and a determination of whether the opposing party has received notice regarding the claim or defense raised by the amended pleading. * * * In this way a filing of an amended complaint involves the consideration of notice, liberalized pleading, relation back of the statute of limitations, and a finely honed interpretation of the phrases `cause of action' and `conduct, transaction or occurrence.'" Id. at 1144 (citations omitted).
Applying the above standard, the Court finds that the amended complaint satisfies the relation-back requirements of Rule 15(c). First, the allegations contained in the amended complaint, while stating a theory of liability different from that expounded in the original version, arise out of the same occurrence as those in the first complaint — namely the committee's alleged negligence on the night of March 9, 1992. This is not a situation where plaintiff is alleging separate causes of action arising at separate points in time. See, Mainella, 608 A.2d 1145
(liability of an employer for negligent supervision or hiring arises out of "a totally different occurrence" from the liability of an employer under the doctrine of respondeat superior.) Therefore, the "identity-of-transaction test" is satisfied. Second, it is not unreasonable to conclude that the committee was on notice of the amended complaint. Upon commencement of discovery and realization by plaintiffs counsel of the errors contained in the original complaint, it is logical that the committee would expect plaintiff to amend the complaint to conform to the evidence. See, Manocchia, 658 A.2d at 910 (holding that the defendant could not claim lack of notice because "but for mistake" the plaintiff would have pled the correct theory of relief in his original complaint, and the defendant was not now being forced to defend a new theory of liability "at the eleventh hour.")
Having superseded its earlier version, the amended complaint will be viewed as having been filed in April of 1993. The Court must now assess the allegations set forth in the amended complaint in light of the version of Rule 11 in effect at that time, and may not apply the current version of the rule which was amended in 1995. See, D'Amario v. State, 686 A.2d 82, 84 (R.I. 1996) (noting that in determining whether to sanction the state for the 1994 signing of an objection to a discovery request, the 1995 amended version of Rule 11 would be inapplicable and the state's conduct would be judged in light of Rule 11 as it existed in 1994). In April of 1993, the text of Rule 11 read as follows:
 "Every pleading of a party represented by an attorney shall be personally signed by at least one (1) attorney of record . . . The signature of an attorney constitutes a certificate by the attorney that he or she has read the pleading; that to the best of his or her knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay."
The pre-1995 version of Rule 11 required only that plaintiffs counsel have subjectively believed that he had "good ground to support" the allegations made in the amended complaint. See,Forte Brothers, Inc. v. Ronald M. Ash Associates, Inc.,612 A.2d 717, 724 (R.I. 1992) ("the subjective standard remains applicable" when analyzing Rule 11 violations that allegedly occurred prior to the September 5, 1995 amendment of the rule);see also D'Amario v. State, 686 A.2d at 85 (citing ForteBrothers, Inc. with approval). Further, allegations contained in a complaint are not made in bad faith so as to entitle a defendant to attorney's fees "`so long as the claim has some legal and factual basis when considered in light of the reasonable belief of the individual making the claim.'" ForteBrothers, Inc., 612 A.2d at 724 (citing Quill Co. v. A.T. CrossCo., 477 A.2d 939, 944 (R.I. 1984)).
In the present case, prior to amending the original complaint plaintiffs counsel had at his disposal depositions given by Kent and Thomas Post, the committee's co-chairperson. In her sworn deposition taken on August 15, 1995, Kent testified that she learned of the Buchanan speech and press conference by reading advertisements of the event in the local newspaper. She later testified that, but for the advertisement in the newspaper, she probably would not have attended the function. Moreover, although conceding that she did not work for the committee, Kent confirmed that she had previously donated five hundred dollars to the campaign and spent the morning of the event stuffing mailboxes with Buchanan campaign literature. Kent testified that she arrived at the hotel at approximately five o'clock on March 9, 1992, more than one hour before the speech was scheduled to start, and proceeded to the lounge to peruse a newspaper and await Buchanan's appearance. For the next two hours she remained in the lounge and imbibed two glasses of Chardonnay. Following the speech and press conference, Kent testified that she joined several other people in the lounge to converse about the night's events. There, she claimed she drank nearly two more glasses of wine, leaving the last glass two-thirds empty. She decided to leave the hotel at approximately 9:30 p.m. Kent's recollection of certain events of that night was spotty, and she testified that she spoke to Thomas Post in the days following the accident and that he helped her recall some of her actions. In particular, Kent testified that Post offered to call her a cab when she decided to leave the function, but she obviously refused the ride.
On June 15, 1995, Thomas Post provided sworn deposition testimony. He denied having provided Kent with any alcoholic beverages and testified further that he personally did not recall her drinking. However, Post did remember seeing a glass of wine on the table in front of Kent and conceded that Kent "appeared to be inebriated." Post also confirmed that he offered to call a cab to escort Kent home.
Based on the testimony of Kent and Post, the Court finds that there existed factual and legal support for plaintiff's allegation that Kent was implicitly invited to the event, and that members of the committee witnessed her drunkenness and failed to adequately supervise her actions. Whether this set of circumstances gave rise to a legal cause of action was a question to be decided by the motion justice on the committee's motion for summary judgment.[2] However, this Court cannot conclude that the allegations set forth in the amended complaint lack "good ground [for] support," or that plaintiffs counsel could not subjectively and in good faith believe that the claims against the committee had merit. Thus, the allegations set forth in the amended complaint are legally sufficient to deny the committee's motion for sanctions.
For all of the reasons set forth above, the committee's motion for sanctions is hereby denied.
Counsel shall submit the appropriate order.
[1] The committee objected to this latest motion to amend. Subsequently, plaintiff filed a stipulation in which he purported to "grant" the committee's motion, and thus the amendment never took effect.
[2] The hearing on the committee's third summary judgment motion occurred on December 3, 1996. There, the motion justice concluded that liability based upon the doctrine of respondeat superior could not lie against the committee for two reasons. First, Kent was not a member of the committee and thus "no such duty was owed by the [committee] in this case to prevent [Kent] from operating a motor vehicle on the basis that, if she operated the motor vehicle, it was foreseeable that she was going to have an accident involving this plaintiff." (Tr. at 3). Second, the motion justice determined that the members of the committee present in the lounge after the speech and press conference were not engaged in the "performance of their obligation to the defendant committee so that any actions that were taken by them could be on a doctrine of respondeat superior charged to the Buchanan For President Committee." (Tr. at 4).