**LOCKHEED MARTIN ENERGY SYSTEMS, INC., Plaintiff,**

v.

**Edward A. SLAVIN, Jr., Defendant.**

No. 3:98–CV–613.

United States District Court,
E.D. Tennessee,
at Knoxville.

Dec. 6, 1999.

Edwin H. Rayson, Jr., Kramer, Rayson, Leake, Rodgers & Morgan, Knoxville, TN, Patricia Lane McNutt, Lockheed Martin Energy Systems, Inc., Oak Ridge, TN, for plaintiff.

David A. Stuart, Stuart & VanRiper, Clinton, TN, for defendant.

*MEMORANDUM*

COLLIER, District Judge.

On October 25, 1999, the Court held a hearing on Plaintiff Lockheed Martin Energy Systems, Inc.'s ("Lockheed") Motion for Sanctions pursuant to *Fed.R.Civ.P.* 11 (Court File No. 14). After hearing arguments of counsel, considering the memoranda in support of and in opposition to the motion, and the applicable law, the Court orally granted Plaintiff's Motion and summarized its reasons for so doing from the bench. At that time the Court stated it would issue an expanded written explanation of its decision later. This memorandum opinion is that fuller decision.

## I. BACKGROUND

### A. Procedural History

Unfortunately, this litigation has a long history, and an extensive summary of that history is necessary to explain what lead to the Rule 11 motion and the Court's decision. This case was brought by Plaintiff Lockheed against Defendant Edward A. Slavin, Jr. to compel Mr. Slavin to comply with a September 6, 1996 order from the United States Department of Labor ("DOL"). Mr. Slavin is an attorney licensed to practice law in Tennessee. The DOL order required Mr. Slavin to repay Lockheed over $27,000 in attorney fees.

The initial DOL litigation involved a charge of discrimination and retaliation filed by Mr. Slavin and other attorneys on behalf of C.D. Varnadore against Mr. Varnadore's employer, Lockheed. This charge was filed with the DOL on November 20, 1991. According to the charge, Lockheed subjected Mr. Varnadore to a hostile work environment as a result of Mr. Varnadore engaging in federal statutorily protected activity. This litigation became known as *Varnadore I.* See *Varnadore v. Secretary of Labor,* 141 F.3d 625, 628 (6th Cir.1998).

In June 1993, after holding a hearing on the matter, the DOL Administrative Law

Judge ("ALJ") issued a decision in Mr. Varnadore's favor. Lockheed exercised its right to appeal the decision to the Secretary of Labor. Two days after the first decision was rendered, on June 9, 1993, Mr. Slavin filed a second charge of discrimination against Lockheed on behalf of Mr. Varnadore. This second charge, *Varnadore II* as it came to be known, was filed pursuant to the Energy Reorganization Act of 1974 ("ERA"), 42 U.S.C. § 5851. This second charge prompted the DOL order that Lockheed sought to enforce in this lawsuit in this Court. A third charge of retaliation, *Varnadore III*, was filed on August 2, 1994.

The ALJ held a hearing on the *Varnadore II* claims in May 1994. Mr. Slavin represented Mr. Varnadore at the hearing. Following the hearing, the ALJ issued a recommended decision and order which found in favor of Lockheed on all but one of Mr. Varnadore's claims. After receiving a favorable ruling on behalf of Mr. Varnadore, Mr. Slavin filed a petition for attorney fees. The ALJ granted Mr. Slavin's request in a June 23, 1995 recommended order. Mr. Slavin then moved the Secretary to issue a "Preliminary Order" requiring Lockheed to pay him the attorney fees and expenses recommended by the ALJ. Lockheed objected to the payment of attorney fees, however the Secretary ordered Lockheed to pay Mr. Slavin $27,174.83 in attorney fees and expenses. Lockheed complied with the order and paid Mr. Slavin the ordered amount.

On January 26, 1996, the Secretary of Labor issued a Decision and Order reversing the ALJ's decision in *Varnadore I*, but deferred full consideration of two issues in the case pending the ALJ's ruling in *Varnadore II* and *Varnadore III*. In April 1996, the Secretary established the Administrative Review Board ("ARB") which was responsible for "issuing final agency decisions on question of law and fact arising in review or on appeal" under a number of laws, including the whistleblower statutes at issue in this lawsuit.

Two months later, on June 14, 1996, the ARB issued a final decision in all three *Varnadore* cases. Ultimately, the ARB ruled in favor of Lockheed in all three cases. Subse-

quent to this ruling, on June 21, 1996, Lockheed filed a motion with the ARB to order Mr. Slavin to repay the $27,174.83 in attorney fees and expenses previously paid to him. Lockheed's motion was granted on September 6, 1996. The ARB rescinded the ALJ's September 11, 1995 preliminary order granting Mr. Slavin $27,174.83 in attorney fees and expenses and ordered Mr. Slavin to repay that amount to Lockheed.

With a final decision in the *Varnadore* cases in June 1996 Mr. Slavin petitioned the United States Court of Appeals for the Sixth Circuit to review the ARB's June 14, 1996 decision in favor of Lockheed on the merits. In December 1996, Mr. Slavin petitioned the Sixth Circuit to review the ARB's September 6, 1996 order rescinding the award of attorney fees and ordering Mr. Slavin to repay the attorney fees and expenses paid to him by Lockheed. The Sixth Circuit consolidated both petitions for review. Following oral argument the Sixth Circuit affirmed the ARB's ruling in a published decision. *Varnadore v. Secretary of Labor*, 141 F.3d 625 (6th Cir.1998). The Sixth Circuit further held the Secretary of Labor lawfully created and delegated authority to the ARB to issue final agency decisions. In June 1998, the Sixth Circuit denied Mr. Slavin's request for a rehearing *en banc*. Mr. Slavin did not file a petition for certiorari with the United States Supreme Court.

On October 5, 1998, Lockheed initiated this action in this Court seeking an order requiring Mr. Slavin to comply with the September 6, 1996 order of DOL ordering him to repay the attorney fees and expenses he had received. In the complaint Lockheed states "[b]y letters dated June 23, 1998 and August 3, 1998, [it] requested [Mr. Slavin] repay the sum of $27,174.83." The complaint alleges Mr. Slavin failed to respond to the letters. Four days later, Mr. Slavin filed a motion with a DOL ALJ to reopen the *Varnadore* cases. This motion was denied on December 28, 1998.

### B. *Factual Background for Rule 11 Motion*

Based upon the history of the case and the facts, the Court was faced with a relatively

straight-forward, routine collection issue. The factual issues relating to the repayment of the attorney fees and expenses were uncomplicated and in large measure had been resolved by the ARB. The Sixth Circuit had determined many of the underlying legal issues and those remaining did not appear to be particularly complex.

In light of the relatively uncomplicated nature of the case, on June 18, 1999, the Court entered a Memorandum and Order granting Plaintiff's Motion for Summary Judgment and ordering Mr. Slavin to comply with the DOL order. In addition, the Court ordered Mr. Slavin to pay all costs associated with this action and all prejudgment interest accruing from the date of the DOL order. Mr. Slavin filed a Motion to Reconsider which the Court denied on August 17, 1999 (Court File No. 27).

What took this case out of the routine was Mr. Slavin's Answer to the complaint filed on November 2, 1998 (Court File No. 3). Mr. Slavin chose not to obtain counsel to represent him but decided instead to proceed *pro se*. Instead of filing an answer stating "in short and plain terms" his defense to the asserted claim as required by *Fed.R.Civ.P.* 8,[1] Mr. Slavin's Answer was seventeen pages long and replete with unnecessary, baseless, irrelevant, and frivolous claims, defenses, and legal contentions. In his Answer, Mr. Slavin never denies he received the attorney fees, that he was ordered by the ARB to repay the money, or that he has not repaid the money. The Answer contains very little in the way of an appropriate pleading. The Answer includes the following allegations and statements:

(1) "Mr. Varnadore is for purposes of this attorney fee litigation to be considered a 'prevailing party' because of the changes wrought in policy. This lawsuit is harassment. That harassment is part of Lockheed Martin's 'hardball' approach to Oak Ridge whistleblower actions, which harassment includes spending millions of dollars of Government monies to defend whistleblower actions, without ever engaging in good faith settlement offers in the Varnadore litigation" (Answer, Court File No. 3, ¶ 1, pp. 1–2);

(2) "Government and contractor whistleblower retaliators threaten public health and welfare and destroy lives and democratic values" (*Id.* at ¶ 1, p. 2);

(3) "Plaintiff Lockheed has 'unclean hands' ... rightfully earning Lockheed's predecessor, Martin Marietta, a place among the *Multinational Monitor*'s ten worst corporations of 1991" (*Id.* at p. 3);

(4) "Lockheed has been known to falsely personify itself as if it were the Government, merely because it is the world's largest defense contractor and world's largest 'arms merchant'" (*Id.* at ¶ 2, p. 3);

(5) "Denied that the ARB properly acted on authority of the Secretary of Labor, which was not his to delegate to a board consisting of non-judges to reverse the decision of two duly appointed, independent United States Administrative Law Judge [sic], who were appointed pursuant to 5 U.S.C. § 3105" (*Id.* at ¶ 13, p. 4);

(6) "[T]here is no legal or equitable basis for Defendant to repay money to a corporation that has received millions of dollars in funds to fight whistleblowers in Oak Ridge, making profits on its cost-plus

---

1. Rule 8 states in relevant part:
 A party shall state in short and plain terms the party's defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies. If a party is without knowledge or information sufficient to form a belief as to the truth of an averment, the party shall so state and this has the effect of a denial. Denials shall fairly meet the substance of the averments denied. When a pleader intends in good faith to deny only a part or a qualification of an averment, the pleader shall specify so much of it as is true and material and shall deny only the remainder. Unless the pleader

intends in good faith to controvert all the averments of the preceding pleading, the pleader may make denials as specific denials of designated averments or paragraphs or may generally deny all the averments except such designated averments or paragraphs as the pleader expressly admits; but, when the pleader does so intend to controvert all its averments, including averments of the grounds upon which the court's jurisdiction depends, the pleader may do so by general denial subject to the obligations set forth in Rule 11.

*Fed.R.Civ.P.* 8(b).

contract on every legal bill it pays to prestigious Knoxville law firms to fight protected activity under the Energy Reorganization Act and create chilling effects upon the Oak Ridge workers who courageously raise environmental, safety and health concerns to their continuing economic and physical peril" (*Id.* at ¶ 16, pp. 4–5);

(7) "The order issued in 1996 was without legal foundation or precedent, contrary to DOL precedents, and unilaterally seeks to insert a clause into the ERA that Congress did not put there and which is not written in any DOL regulation. The 1996 Order is thus an example of agency lawbreaking that is prohibited ..." (*Id.* at ¶ 17, p. 5);

(8) "Defendant was under no duty to answer Mr. Wilson Gaither Horde [opposing counsel] ... Horde was always hostile, offensive and threatening toward Defendant from the very first contact on this litigation in 1991, when he falsely implied that something unethical was done in filing the case with the Department of Labor, apparently seeking to abuse his positions with the Tennessee Board of Professional Responsibility to chill zealous advocacy on the part of Oak Ridge workers. Horde apparently identifies with managers who are very much part of the 'old culture' of management retaliation against protected activity that Judge von Brand wrote about ... It appears that Horde's faxed collection letters may have violated certain provisions of the Fair Debt Collection Practices Act. In any event, Horde bears personal animus toward Defendant for having successfully sought a Protective Order from Judge von Brand in response to sexist, hostile and deeply offensive comments that Horde made about Mrs. Fran Varnadore, to the effect that he wanted to read her psychiatric records to know what was going on 'in the mind of a redheaded woman.' Mr. Horde's remarks were not privileged in any way and reflected at best a prurient interest in private matters that were none of his business ... In 1994, Horde wrongfully sought monetary sanctions against Defendant, solely as a result of zealous advocacy, when there are no monetary sanctions allowed in the United States Department of Labor. Horde's 1994 monetary sanctions effort was unavailing. Horde *never* apologized for any of this uncivil and inappropriate behavior at any time during the past seven years. The instant lawsuit is a continuation of this seven year history of harassment by other means" (*Id.* at ¶ 18, pp. 5–7);

(9) references to actions of Mr. Horde dating back to 1992: "[i]n response to a Motion for Protective Order being filed in 1992, Horde verbally demanded that Mr. Varnadore's counsel withdraw the document truthfully and indisputably alleging this statement [alleged statement regarding red-headed woman] of Horde's from the public record" (*Id.* at p. 6);

(10) "Mr. and Mrs. C.D. Varnadores have suffered for seven years from the continuing stress from an extremely hostile working environment, with Mr. Varnadore suffering from a '**senseless, obnoxious, offensive,**' both '**thoughtless and cruel**'" (*Id.* at ¶ 19, p. 7) (emphasis in original);

(11) "The Varnadores' continuing stress is partly the *sequelae* of former Department of Labor Office of Administrative Appeals Director M. Elizabeth Culbreth's **deliberately** created backlog from 1985–93 (DOL IG report), which helped produce 7 [sic] **years of delays** in Mr. Varnadore's case. The late Senator Edmund Muskie crafted America's first environmental whistleblower statutes to provide swift justice, **within 90 days.** Like other ethical American workers, such as Detroit Edison Company employee Carolyn Larry (who waited five years for the Secretary of Labor to decide her case against Detroit Edison), the Varnadores still suffer due to Lockheed Martin consultant M. Elizabeth Culbreth's cynical policy of desuetude and its continuation under three Presidential Administrations, with chilling effects continuing. Only after years of litigation delays was the politically influential Lockheed able to use Ms. Culbreth's 'quarterbacking' to help 'win' a decision that said that Mr. Varnadore's 1991 complaint was not timely under a then-prevailing 30 day statute of

limitations under ERA, with the subsequent decision of the questionably appointed ARB atomizing the egregious facts of Mr. Varnadore's case instead of considering the whole retaliation as a continuing violation as required by whistleblower precedents" (*Id.* at ¶ 19, pp. 7–8) (emphasis in original);

(12) "Lockheed is not entitled to the relief sought because there is no statutory provision in the ERA for recoupment of a fee ordered pursuant to the preliminary order, and its action is brought to chill the exercise of First Amendment protected activity" (*Id.* at ¶ 21, p. 9);

(13) citations to legally inadmissible materials apparently contained in newspapers, such as the *New York Times* and the *Chattanooga Times,* and a television program, CBS News (*Id.* at ¶ 21, p. 9);

(14) "Lockheed has abused civil process in this case by serving [Defendant] by having a burly process server visit his home at night, when the Federal Rules of Civil Procedure both allowed and encourage waiver of service accomplished by mailing a copy of the summons or waiver of summons form and the complaint. This abuse of civil process was solely intended to harass, embarrass and intimidate Defendant and escalate costs of this litigation." (*Id.* at ¶ 29, p. 12);

(15) "Lockheed has invaded personal privacy in this case by serving the undersigned by having a process server visit his home at night, when the Federal Rules of Civil Procedure encouraged and allowed waiver of service or service by mail. This invasion of privacy was intended to harass Defendant and escalate costs of this litigation" (*Id.* at ¶ 30, p. 12);

(16) "Lockheed has brought this case in retaliation for protected activity, and has during the last seven years squandered tens of millions of dollars of federal funds without justification, rightly earning criticism by the General Accounting Office and federal officials." (*Id.* at ¶ 31, p. 12)

(17) "For purposes of this satellite attorney fee litigation, Mr. Varnadore is to be considered as the prevailing party ..." (*Id.* at ¶ 32, p. 13);

(18) "[Lockheed contributed] $2.5 million in PAC 'soft money' funds to Democrats and Republicans in 1996" (*Id.* at ¶ 36, p. 14);

(19) "In his book, *Earth in the Balance,* Vice President Albert Gore, Jr. termed environmental whistleblowers as 'environmental resistance fighters,' and compared U.S. Government failures to protect Americans from environmental problems to Nazi Germany before World War II, and the nations of the world utterly failing to respond to Kristalnacht" (*Id.* at ¶ 39, pp. 15–16).

On February 9, 1999, Lockheed filed the present Motion for Sanctions and filed a Motion for a Hearing on its Motion on July 28, 1999 (Court File No. 14). In the motion Lockheed represented it wrote to Mr. Slavin on November 17, 1998 and "enclosed [the] motion for sanctions along with a Notice of the sanctionable contentions, claims and assertions in the answer." [2] In a declaration by Lockheed attorney Wilson Horde (Court File No. 15), Mr. Horde states he received a response from Mr. Slavin on December 5, 1998 in which Mr. Slavin refused to amend his Answer to withdraw the allegedly sanctionable material. A copy of Mr. Slavin's letter is attached to Mr. Horde's declaration (Court File No. 15, Exh. B).

On March 3, 1999, Mr. Slavin filed his Response to Rule 11 Motion (Court File No. 19). In this response Mr. Slavin repeats the substance of what he included in his Answer but also adds more irrelevant allegations against Lockheed and Mr. Horde. Among these allegations are the following: [3]

---

2. By serving the sanctions motion on Mr. Slavin in November and then waiting until February to file the motion with the court, Lockheed fully complied with Rule 11's "safe harbor" procedural prerequisite. *See Fed.R.Civ.P.* 11(c)(1)(A); *Ridder v. Springfield,* 109 F.3d 288, 294–95 (6th Cir.1997).

3. Sadly, these excerpts are merely illustrative and do not fully depict the extent of these improper allegations. Mr. Slavin's response is replete with additional improper and irrelevant accusations and allegations that have no bearing whatsoever on this collection case.

(1) "Lockheed and its Knoxville and Oak Ridge lawyers have previously behaved obstreperously in DOL whistleblower litigation. This includes improper threatening remarks made by Lockheed lawyer Edward Phillips ("motion to strike you") during a 1994 deposition in the *Freels* case. Lockheed has also wrongfully sought sanctions to chill free speech rights, as it did in the *Varnadore II* case. Lockheed has also wrongfully used government money to file a SLAPP suit (Strategic Lawsuit Against Public Participation) against the Secretary of Labor and Dr. William K. Reid, M.D., seeking to prohibit Dr. Reid from using his right to DOL remedies. The suit was filed in United States District Court for the Eastern District of Tennessee and was dismissed" (Response to Rule 11 Motion, Court File No. 19, ¶ 5, p. 3);

(2) "Lockheed Martin's sordid history is that of a global wrongdoer.... 'Payoff Scandals and Lockheed' & '$24.8 Million Penalty Paid by Lockheed—Guilty Plea in Bribery of Egyptian Legislator' . . . globe-girding international corporate bribery activities that embraced illicit payments to European royalty . . . unfounded libel suit dismissed, re: truthful *Washington Star* allegations of a 'stag party' where prostitutes mingled with Generals, Admirals and other Defense Department personnel" . . . former DOL OAA Director Ms. M. Elizabeth Culbreth's receipt of Lockheed money to advise Lockheed on DOL whistleblowers may be seen as Ralph Nader's *bete noir*—the 'deferred bribe' to government officials. Such is commonplace for government officials in Washington, D.C., including retired DOE officials, Generals and Admirals and DOE officials hired by Respondent Lockheed to work on government contracts" (*Id.* at ¶ 7, pp. 4–5) (citations to various newspapers, books, and other materials, some of which date back to 1976, have been omitted).

As an attachment to his response, Mr. Slavin includes a nine page Declaration of James Nelson Ramsey, District Attorney General for The Seventh Judicial Circuit (*Id.*, Exh. B). This sworn declaration was executed nearly four years prior to the litigation in this case, on April 27, 1994. According to his declaration, Mr. Ramsey is a former District Attorney whose law license was suspended by the Tennessee Supreme Court in part, he believes, because of actions taken by Mr. Horde. Mr. Slavin assisted Mr. Ramsey and his attorney in Mr. Ramsey's defense of the attorney disciplinary action. In essence, Mr. Ramsey's declaration is a further attack on Mr. Horde and Lockheed, and a positive character reference for Mr. Slavin. Even presuming everything in Mr. Ramsey's declaration is true, all of this information is still completely irrelevant to any issue involved in the Court deciding whether Rule 11 was violated. The Court's determination of sanctionable behavior is based on the allegations contained in the pleadings and other filings, not the general character and reputation of Mr. Slavin and/or Lockheed. This declaration was another abuse of the Court as it again unnecessarily consumed the Court's time and resources.

On August 17, 1999, the Court granted Lockheed's Motion for a Hearing on its Motion for Rule 11 Sanctions, and scheduled the hearing for September 28, 1999 at 9:00 a.m. The Court thus afforded Mr. Slavin and Lockheed more than five weeks to prepare for the hearing. Shortly before 9:00 a.m. on the date the sanctions hearing was scheduled, the Court was presented with a Motion to Continue the hearing. The Court was also informed Mr. David Stuart had just entered an appearance as counsel on behalf of Mr. Slavin.[4] Mr. Stuart urged the Court to continue the hearing because Mr. Slavin was unable to be personally in attendance due to scheduling conflicts and because of a recent injury to Mr. Slavin's arm. Despite the late

---

4. The Court sympathizes with Mr. Stuart entering the case at the eleventh hour and facing such an unpleasant matter. It is regrettable Mr. Slavin did not retain Mr. Stuart earlier in the case or at a minimum, consult Mr. Stuart before he took the position he did in this case. At the hearing on October 25, 1999, the Court expressed its appreciation to Mr. Stuart for his representation of Mr. Slavin and his service to the Court and commended Mr. Stuart for his efforts on Mr. Slavin's behalf. The Court takes this opportunity to again thank and credit Mr. Stuart for taking on such a distasteful task.

appearance in the case by Mr. Stuart and the last-minute Motion to Continue, the Court reluctantly granted the continuance and re-set the hearing for October 25, 1999. The Court specifically ordered Mr. Slavin to be present at the rescheduled hearing [5] (Court File No. 33).

The Court held the sanctions hearing as rescheduled on October 25, 1999. Despite the Court's explicit order, Mr. Slavin again failed to appear. However, Mr. Stuart was present and he ably and effectively represented Mr. Slavin, though he was unable to offer a tenable explanation for Mr. Slavin's absence. After hearing the arguments of counsel, the Court issued its oral decision granting Lockheed's motion for sanctions.

## II. *DISCUSSION*

### A. *Standard of Review*

Rule 11 provides in relevant part:

**(b) Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence, or, if specifically so identified, are reasonably based on a lack of information or belief.

*Fed.R.Civ.P.* 11.

In determining whether Rule 11 has been violated, the Court must assess "whether the individual's conduct was reasonable under the circumstances." *Lemaster v. United States,* 891 F.2d 115, 118 (6th Cir.1989) (quotation omitted); *see also Ridder v. Springfield,* 109 F.3d 288, 293 (6th Cir.1997); *Mann v. G & G Mfg., Inc.,* 900 F.2d 953, 958 (6th Cir.), *cert. denied,* 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990); *Fed.R.Civ.P.* 11(b) (requiring "inquiry reasonable under the circumstances"). The test of reasonableness under the circumstances is an objective standard. *Century Prods., Inc. v. Sutter,* 837 F.2d 247, 253 (6th Cir.1988). Wide discretion is accorded to district judges in selecting an appropriate sanction for Rule 11 violations, including the authority to issue directives of a non-monetary nature. *Fed. R.Civ.P.* 11; *Tidik v. Ritsema,* 938 F.Supp. 416, 427 (E.D.Mich.1996). The appellate court will "review all aspects of a [district] court's Rule 11 determination for abuse of discretion." *Ridder,* 109 F.3d at 293. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990); *Fed.R.Civ.P.* 11 advisory committee's note (1993 Amendments). "A court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evi-

---

5. When Mr. Stuart made his appearance in the case on September 28, 1999, he expressed concern regarding conducting discovery and presenting witnesses on the issue of the time opposing counsel spent in the case and their standards fees, issues possibly relevant if a monetary sanction in the form of attorney fees and costs was awarded Plaintiff. The Court explained if that became a relevant issue the Court would likely follow the standard practice in such matters and have the attorneys submit their costs to the court by way of a motion and affidavit. If there were objections to what had been submitted, the Court would refer it to the Magistrate Judge for determination. The Court also suggested Mr. Slavin should be prepared to submit sworn financial statements or other information regarding his financial condition at the next hearing. The Court offered this suggestion so that if monetary sanctions were determined to be appropriate, Mr. Slavin would be prepared to present evidence on his ability to comply with a monetary sanction.

dence." *Cooter & Gell,* 496 U.S. at 405, 110 S.Ct. at 2460–61.

## B. *Application of Rule 11*

■■■ After hearing the arguments of counsel, reading their motions, the provisions of Rule 11, and carefully considering the contents of Defendant's Answer, his Response to the Motion for Summary Judgment, his Declaration in Support of his Response to the Motion for Summary Judgment, his Response to Plaintiff's Rule 11 Motion, and Defendant's Motion to Reconsider, the Court finds Mr. Slavin, an attorney licensed to practice law before this Court and who represented himself in the underlying litigation in this case, has violated Rule 11 in six specific ways: (1) asserting a number of frivolous challenges to the Court's subject matter jurisdiction when he knew that such assertions were not warranted by existing law, (2) asserting a number of frivolous defenses, including assertions Lockheed lacked standing, laches, statute of limitations, estoppel, unjust enrichment, abuse of process, and invasion of privacy, knowing that such assertions lacked evidentiary support and were not warranted by existing law; (3) frivolously denying the authority of the ARB in the face of the Sixth Circuit's decision to the contrary without any factual or legal basis; (4) asserting the decision of DOL was not final without any factual or legal support for that assertion and with no reasonable basis for believing that to be true; (5) pursuing a campaign of personal attacks on Lockheed and asserting irrelevant matters to portray Lockheed as an entity of ill repute, undeserving of legal rights and protections, without any legal or rational basis to believe such materials were germane in any way to the Court's determination: and (6) pursuing a campaign of personal attacks on Mr. Horde and asserting irrelevant matters to malign Mr. Horde's character in an attempt to persuade the Court to discredit anything filed by Mr. Horde on behalf of his client, without any legal or rational basis to believe such materials were material in any way to the Court's determination.

The Court finds Defendant Edward A. Slavin, Jr., has presented to the Court a pleading, that is, his Answer, as well as other written motions and other papers, which contain defenses, claims, and other legal contentions not warranted by existing law and that in fact were frivolous, baseless, irrelevant, meritless, abusive, offensive, and redundant. These pleadings, other motions, and papers were not filed for proper purposes, but were presented to cause unnecessary delay and needlessly increase the cost of the underlying litigation. The filing of meritless and redundant pleadings is recognized as appropriate for sanctions under Rule 11. *Cannon v. Loyola University of Chicago,* 116 F.R.D. 243, 244 (N.D.Ill.1987). These pleadings and other motions and papers contain vicious personal and uncivil attacks against opposing counsel and Plaintiff, were motivated by an intent to harass, and were filed in bad faith.

### 1. *The Answer*

The Court read every word of the 17– page Answer, and it pained the Court to do so. This pleading is not characteristic of the quality of work the Court expects from a lawyer. In fact, it falls below what the Court would expect from someone who had never attended law school. In addition to its unprofessional nature, the Answer demonstrates a callous disregard for the operation and efficient functioning of the Court. The Answer abused the Court's time and resources. It shows a disregard for the legitimacy of decisions of the Court of Appeals for the Sixth Circuit and the Department of Labor Administrative Review Board. This Answer is the worst such pleading the Court has seen filed by a lawyer in its four and one half years on the bench.

### 2. *The Response to Summary Judgment Motion*

In Defendant's Response to the Motion for Summary Judgment (Court File No. 10), filed on December 21, 1998, the Court was subjected to a repetition of the unprofessional, abusive, baseless, and frivolous claims, defenses, and contentions contained in Defendant's Answer. These same claims, defenses, and contentions were repeated in his

Declaration in Response to Motion for Summary Judgment (Attachment to Court File No. 10).

### 3. *The Response to the Rule 11 Motion*

In Defendant's Response to Rule 11 Motion (Court File No. 19), Mr. Slavin again repeats the unprofessional, abusive, baseless and frivolous claims, defenses, and contentions. If anything this filing escalated the vindictiveness seen in the earlier filings. There are personal attacks on Plaintiff Lockheed, citations to the *New York Times*, references to a stag party with prostitutes apparently before 1976 (*see e.g.*, Response at p. 4), and an expansion on his attack on Mr. Horde. This response was abusive, offensive, and demonstrates unprofessional conduct.

### C. *Determination of Appropriate Sanctions*

 Having found Defendant's conduct to be violative of Rule 11, the Court must determine what, if any, sanctions are appropriate. The Court has considerable leeway with respect to imposition of sanctions. In imposing sanctions under Rule 11, the Court recognizes "[s]anctions pursuant to Rule 11 serve the dual purpose of deterring frivolous lawsuits and compensating those parties forced to defend such suits." *Tidik*, 938 F.Supp. at 426. The Court must also keep in mind the primary purpose of Rule 11 is to "deter baseless filings and curb abuse of the judicial system, not to reward parties who are victimized by litigation." *Id.* (citing *Cooter & Gell*, 496 U.S. at 393, 110 S.Ct. at 2454). Any sanctions imposed must be narrowly tailored and must be no more severe than necessary to deter the sanctionable conduct. *Tidik*, 938 F.Supp. at 427. "Equitable considerations and the 'least severe sanction adequate to serve the purpose' should be factors in the sanction determination." *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 420 (6th Cir.1992) (discussing the predecessor to the current Rule 11 and citing *Vairo*, Rule 11, *A Critical Analysis*, 118 F.R.D. 189, 229).

 In *Orlett*, the Sixth Circuit quoted with approval a number of factors to be considered in imposing Rule 11 sanctions:

> In determining an appropriate sanction under amended Rule 11, the court should consider the nature of the violation committed, the circumstances in which it was committed, the circumstances (including the financial state) of the individual to be sanctioned, and those sanctioning measures that would suffice to deter that individual from similar violations in the future. The court should also consider the circumstances of the party or parties who may have been adversely affected by the violation.

954 F.2d at 420 (quoting American Judicature Society, Studies of the Justice System, *Rule 11 in Transition: The Report of the Third Circuit Task Force on Federal Rule of civil Procedure 11*, p. 12 (1989)).

 In fashioning an appropriate sanction, the Court may also consider past conduct of the individual. *Tidik*, 938 F.Supp. at 427. Following this guidance, the Court notes Mr. Slavin recently has been the subject of extremely harsh criticism by DOL administrative law judges for his conduct before them. Attached to Plaintiff's Amended Brief in Support of Plaintiff's Motion for Rule 11 Sanctions (Court File No. 16) are written orders from two administrative law judges, Judges Henry B. Lasky and Edith Barnett. In the most recent case, *Rockefeller v. U.S. Department of Energy and Westinghouse Electric Company*, Nos. 98–CAA–10, 98–CAA–11 (ALJ Sept. 28, 1998), Administrative Law Judge Lasky made the following comments:

> The document filed by Mr. Slavin herein attacks the integrity of the undersigned, falsely accuses the undersigned of making derogatory, inappropriate and condescending remarks, and falsely accuses the undersigned of misconduct in not reading "anything" which Counsel has filed.... Counsel has further accused the undersigned of acting as "defacto defense lawyer" for Respondents, and has alleged that the undersigned is "ethically challenged" and an embarrassment to the U.S. Department of Labor. Such unwarranted, outra-

geous, insulting written abuse constitutes improper professional conduct and evidences a shameless refusal to adhere to reasonable standards of orderly and ethical conduct. The document filed by Counsel constitutes unethical and improper professional conduct.

. . .

The document in question filed by Mr. Slavin is not an isolated instance. In the case at bar, in a letter dated August 3, 1998, he accused the undersigned of bias, favoritism, and a desire to "curry favor" with the national office of the Department of Labor, Office of Administrative Law Judges. In the same document, he announced his intention not to comply with the standard pretrial order of July 16, 1998 issued to all parties because "General Eisenhower did not publish his plans prior to D–Day," and requested an apology from the undersigned for issuing the standard pretrial order used for years in cases such as this to avoid trial by ambush and for requiring him by order of July 29, 1998 to comply with a directive of Chief Judge John Vittone, dated April 2, 1997, issued because of Mr. Slavin's prior abuses.

. . .

Even if Mr. Slavin is afforded a First Amendment protection in his remarks and criticisms of the undersigned, his abusive attacks directed to the undersigned in court documents and improper professional conduct throughout the matter herein, have demonstrated a failure to meet the standard of conduct as set forth in 29 C.F.R. §§ 18.34(g)(3), 18.36. A distinction must be made between out of court criticism, opinions, and remarks about a judge which may be protected by the First Amendment and in court speech or court documents of the same nature directed to the judge which are contemptuous and constitute improper professional conduct or violate standards of conduct. The failure to made such distinction would render the concept of improper attorney conduct a nullity.

. . .

It is hereby ordered that Edward A. Slavin, Jr., Attorney at Law, is permanently barred from appearing before the undersigned in this or any other matter, and is further barred from acting in an advisory capacity to any party to a proceeding before the undersigned in this or any other matter.

*Id.* at 3–5.

In the second case, *Johnson v. Oak Ridge Operations Office, United States Department of Energy,* Nos. 95–CAA–20, 95–CAA–2, 95–CAA–22, (ALJ Feb. 4, 1997), Administrative Law Judge Barnett stated the following after affording Mr. Slavin an opportunity to show cause why he should not be barred from future appearances before her:

On January 27, 1997, Mr. Slavin filed a largely incomprehensible response, combined with other pleadings, filled, as usual, with savage invective, personal attacks on the undersigned, irrelevancies, and misstatements.

. . .

It is evident from his intemperate response that Mr. Slavin, although he is an attorney, is unable or unwilling to conduct himself in an appropriate professional manner. Following his attacks on opposing counsel as "Nazis" and ["]redneck pecker-wood[s]," he has now moved on to attacks on the undersigned Administrative Law Judge. His "style" of practicing law is, unfortunately, a prime example of the continuing problem of lack of civility in litigation, and cannot be tolerated. *See e.g.* Aspen, *What We Can Do About the Erosion of Civility in Litigation,* ABA Judges' Journal 32 (Fall 1996). Accordingly, . . . **IT IS ORDERED** that Edward A. Slavin is permanently barred from appearing before the undersigned, in this or any other matter.

*Id.* at 1–2.

In yet another case, *Rockefeller v. Carlsbad Area Office, Department of Energy,* 1999–CAA–1 (ALJ Dec. 4, 1998), Administrative Law Judge Edward C. Burch stated the following in ruling upon an effort by Mr. Slavin to obtain a trial on a matter on administrative appeal where Mr. Slavin alleged that the ALJ in the earlier matter had engaged in unethical conduct:

The allegations of the second complaint, not alleged in the first complaints, have been supported by no evidence. Those allegations are dismissed under both the doctrine of collateral estoppel and for the reason they are unfounded attempts, completely lacking in evidence, to impugn the integrity of the trial judge in the earlier case, solely for the reason the Judge's rulings were adverse to complainant.

*Id.* at 3. Taking into consideration all of the above stated facts and law, the Court imposes the following sanctions.

### A. *Reprimand*

██ Here the Court is faced not just with an attorney who has filed baseless, frivolous, and unprofessional pleadings and responses to motions, but an attorney who has done so repeatedly, flagrantly, and in a manner which reflects a callous disregard for the proper and efficient functioning of the Court and also reflects a sense of disrespect for the authority of the judicial system and the obligations of the legal profession. For such flagrant, repeated misconduct a censure or reprimand is appropriate. The Court intends this Memorandum and Order to serve as a censure or reprimand and the Court will direct the Clerk of Court send a copy of this opinion to every bar of which Mr. Slavin is a member.

### B. *Written Apology*

██ Second, Mr. Slavin's personal attacks on opposing counsel and the Plaintiff in this case are unprofessional. The legal profession is suffering a decline in public esteem and respect and that diminished regard has been fueled to some degree by uncivil, intemperate personal attacks launched by attorneys. Even if Mr. Slavin's accusations were true they have no place in litigation or in a court of law. The law is a honored and honorable profession and fellow members of the profession are owed respect, courtesy, and consideration. An appropriate non-monetary sanction is appropriate to impress upon Mr. Slavin the unacceptable nature of his conduct. The Court will therefore order Mr. Slavin to make a written apology to Mr. Horde and to the Plaintiff. In these letters, Mr. Slavin shall acknowledge the inappropri-

ateness of his personal attacks, and express remorse for injecting such attacks in this case. The Court expects Mr. Slavin has already submitted his written apology pursuant to the Court's oral order of October 25, 1999. However, to the extent Mr. Slavin has not already done so, his apology should be sent to Mr. Horde and Plaintiff on or before ***Monday, December 20, 1999.***

### C. *Payment of Costs and Expenses*

Third, the Court imposes a monetary sanction. This monetary sanction is imposed on motion and warranted for effective deterrence. As contemplated by Rule 11, this sanction is that the Defendant pay the reasonable attorney fees and other expenses incurred by Plaintiff as a direct result of the Rule 11 violation minus any monies Defendant has already been ordered to pay. Plaintiff shall submit a bill of cost to the Clerk of Court setting out the fees and other expenses allegedly incurred. At that time the Court will determine the exact amount of this sanction.

Even though Rule 11 now "de-emphasizes monetary sanctions and discourages direct payouts to the opposing party," *Ridder,* 109 F.3d at 294, the rule explicitly allows for expenses "incurred as a direct result of the violation" to be paid directly to the other party "if imposed on motion and warranted for effective deterrence." *Fed.R.Civ.P.* 11(c)(2). The drafters of Rule 11 note a direct payout to the injured party is particularly appropriate for Rule 11(b)(1) violations involving improper motivations of the type found here. *See Fed.R.Civ.P.* 11, advisory committee's notes (1993 Amendments). Although on the record the Court explicitly informed Mr. Stuart on September 28, 1999, that Mr. Slavin might submit a financial statement to the Court or other evidence bearing upon his financial condition in light of the possibility of a monetary sanction, no such evidence has been submitted. Moreover, Mr. Slavin has never challenged his ability to pay a monetary sanction nor opposed Lockheed's submissions detailing the attorneys' expenses incurred in contesting Mr. Slavin's frivolous claims and defenses. The Court imposes this sanction after consid-

ering all of the factors mentioned in *Orlett* and after taking into consideration the financial and other circumstances of Lockheed.

### D. *Suspended Sanctions*

Finally, the Court is concerned about the unprofessionalism repeatedly demonstrated by Defendant in this case. Again, the primary concern is deterring future such unprofessional behavior on Defendant's part.

The Court has considered requiring Mr. Slavin to take remedial courses in civility and professionalism, proper legal writing and the drafting of legal pleadings and motions. The Court also considered requiring Mr. Slavin to have all future pleadings and motions reviewed and cleared by an experienced attorney, and even considered prohibiting Mr. Slavin from practicing before this Court for a time. However, in Mr. Slavin's pleadings, he states he was formerly an employee of a nonprofit public interest organization, the Government Accountability Project. Although the Court is unaware of the reputation of this particular public interest organization, the Court believes most such organizations only recruit and hire very competent attorneys and provide them with sound legal training. The Court therefore assumes Mr. Slavin has the necessary training and skills to be a reasonable competent, properly trained attorney who knows the proper way to practice law, but in the past few years has fallen off track.

With that assumption, the Court will not view Mr. Slavin's unprofessional behavior in this case and violations of Rule 11 as indicative of his ability to practice law. From his pleadings and other filings, it is clear he has lost all sense of objectivity as evidenced by his vicious personal attacks on Mr. Horde and on Plaintiff. Perhaps his closeness to the issues have motivated his unprofessional behavior. Fortunately, since Mr. Slavin represented himself his unprofessional conduct did not harm an innocent client. Taking all that into consideration, and in an effort to deter future such misconduct, the Court imposes an additional monetary sanction in the amount of $10,000.00 payable to the Clerk of Court for the great amount of judicial resources wasted in this case.

Where an attorney has repeatedly filed meritless and redundant materials in a case resulting in a needless waste of judicial resources, monetary sanctions payable directly to the Clerk of the Court are appropriate. *Cannon,* 116 F.R.D. at 244; *Advo System, Inc. v. Walters,* 110 F.R.D. 426, 433 (E.D.Mich.1986); *Olga's Kitchen of Hayward, Inc. v. Papo,* 108 F.R.D. 695, 711 (E.D.Mich.1985); *Itel Containers Int'l Corp. v. Puerto Rico Marine Management, Inc.,* 108 F.R.D. 96, 106 (D.N.J.1985). As stated by the district court in *Cannon* "[t]he taxpayers of the United States should not have to bear the burden of [Plaintiff's] 'penchant for harassing the defendants,' ... which has turned into a penchant for unduly burdening this Court as well." 116 F.R.D. at 244 (citation omitted). In this case the taxpayers should not have to bear the burden of Mr. Slavin's penchant for harassing Plaintiff.

The Court will not impose this sanction immediately, but will instead suspend imposition of this sanction for one year, conditioned upon Defendant complying with all of the foregoing sanctions and the Defendant not engaging in conduct violative of Rule 11 before any Court, whether federal or state, judicial or administrative. Even if an administrative body does not have a rule comparable to Rule 11, Defendant is expected to conform his conduct to Rule 11 standards. Any violation before any court, judge, administrative law judge, or administrative review board or body would warrant imposition of this monetary sanction.

At the hearing on this matter, in connection with the Court's decision that Mr. Slavin has violated Rule 11 and the imposition of sanctions, the Court ordered Mr. Slavin to provide the Court on or before November 4, 1999 a listing of all bars, whether state, federal, or administrative, of which Mr. Slavin is a member, and all pending cases where he represents a party or is a party. The Court further ordered another such listing to be provided to the Court six months later, on or before May 4, 2000. As of the date of entry of this Memorandum and Order, Mr. Slavin has not provided the requested information to the Court which was due on or

before November 4, 1999. Thus it appears even in the face of very serious sanctions and a direct order from the Court, Mr. Slavin continues to demonstrate a lack of respect for the Court and its authority. Despite what the Court said earlier, the Court finds such blatant disregard for the Court's Orders on more than one occasion extremely troubling and perhaps indicative of Mr. Slavin's competence to practice law.

Although Mr. Slavin's actions (or inaction, as the case may be), warrant imposition of the $10,000.00 monetary penalty previously mentioned by the Court, the Court will give Mr. Slavin the benefit of the doubt and presume Mr. Slavin misunderstood the Court's oral Order and was awaiting entry of the written memorandum before complying with the Court's directives. Thus the Court will extend the deadline for Mr. Slavin's submissions of his bar memberships and listing of cases in which he is involved either as an attorney or party until *Monday, December 20, 1999.* Failure to timely comply with the Court's order will result in imposition of the $10,000.000 monetary penalty and possible further sanctions.

## III. *CONCLUSION*

The Court has approached this matter with obvious distaste. Courts are understandably reluctant to impose sanctions against a member of the bar. Only because of the egregious nature of Mr. Slavin's actions has the Court been compelled to take this action. The Court trust these measures will be effective to deter Mr. Slavin from repeating this unprofessional conduct demonstrated in this case.

