Arthur D'AMARIO, III

v.

The STATE of Rhode Island et al.

No. 96–72–M.P.

Supreme Court of Rhode Island.

Dec. 5, 1996.

Arthur D'Amario, III, pro se.

James R. Lee, Assistant Attorney General, Gerald C. DeMaria, Providence, for Defendant.

## OPINION

FLANDERS, Justice.

This matter came before us pursuant to an order directing the parties to appear and show cause why the issues raised in the petition for certiorari should not be decided without further briefing and argument.

Having reviewed their memoranda, we perceive no cause why we should not decide the petition at this time. We therefore proceed to determine that a Superior Court motion justice improperly sanctioned the defendants for objecting to one of the plaintiff's discovery requests because they did so without having first ascertained whether the requested documents were still in existence. We also decide that it was inappropriate in the circumstances of this case for the court to extend the plaintiff's *in forma pauperis* benefits to enable him to conduct further discovery.

### The Facts

In 1991 plaintiff, Arthur D'Amario III (D'Amario), filed suit pro se against defendant State of Rhode Island and others (collectively referred to herein as the state), alleging in part that he was the victim of medical malpractice while he was in the state's care at the Institute of Mental Health (IMH) in 1973. He was granted leave to proceed *in forma pauperis.* In 1994, during the pretrial discovery process, D'Amario filed and served various document requests, including one that sought a document(s) known as the Record of Visitors (Record) that listed various patients with whom he had been interned at the IMH. The state objected to this discovery request on the grounds that the Record was inter alia "an invasion of the privacy of the named persons."

D'Amario unsuccessfully sought to compel production of the Record through the prosecution of various motions in the Superior Court and the filing of two petitions for certiorari with this court. In April 1995 D'Amario learned that the Record was destroyed sometime in 1989 or 1990. In early 1996 he moved for sanctions against the state, alleging violations of Rules 11 and 26(f)[1] of the Superior Court Rules of Civil Procedure and G.L.1956 § 9–29–21.[2] D'Amario claimed that the state's failure to conduct a reasonable investigation into the existence of the Record before objecting to its production caused him to expend unnecessary funds in attempting to compel production through a court order. D'Amario also sought an extension of his *in forma pauperis* benefits in order to conduct future depositions.

A Superior Court motion justice granted both of D'Amario's motions, sanctioned the state $250, and awarded D'Amario a $400 extension of *in forma pauperis* benefits. The state then petitioned this court for relief, and we issued a writ of certiorari to address these issues.

### I

### The Award of Sanctions

Our first task is to decide whether any of the rules and statutory provisions (Rules 11, 26(f), and G.L.1956 § 9–29–21) that were relied upon by D'Amario can sustain the motion justice's determination that the state improperly certified its objection to D'Amario's document request. We think they cannot and conclude that the imposition of sanctions was an abuse of discretion.

Section 9–29–21 was enacted in 1986,[3] and its wording generally follows the 1983

---

1. Rule 11 of the Superior Court Rules of Civil Procedure reads in relevant part:

   "The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law * * *."

   Rule 26(f) of the Superior Court Rules of Civil Procedure reads in relevant part:
   "The signature of the attorney or party constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, the request, response, or objection, is:

   (1) Consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law."

2. General Laws 1956 § 9–29–21 reads in relevant part:

   "The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law * * *."

3. Public Laws 1986, ch. 350.

amendment to Fed.R.Civ.P. 11. *See* 1995 Comm. Notes to Super. R. Civ. P. 11. However, by its terms § 9–29–21 applies only to causes of action arising on or after July 1, 1987. The present cause of action arose in 1973 when D'Amario allegedly suffered injury while at the IMH.[4] Therefore, any award of sanctions against the state in the present case could not be based on this statute.

■ Similarly, we conclude that Super. R. Civ. P. 26(f), entitled *"Signing of Discovery Requests, Responses, and Objections,"* could not be appropriately applied to the discovery objections at issue here. Rule 26(f), in its present form, was adopted in September 1995. As the Committee Notes accompanying it indicate, this rule was based on its federal counterpart, Fed.R.Civ.P. 26(g). However, prior to its enactment in 1995, neither Rule 26(f) nor any other state counterpart to Federal Rule 26(g) existed in Rhode Island. Thus, to require a party to meet a certification standard that was not even in existence when the state filed its

objection in March 1994 to plaintiff's request for production of the Record "would work injustice" and cannot form the basis for any sanctions award.[5]

Rule 11 of the Superior Court Rules of Civil Procedure is likewise inapplicable to D'Amario's sanctions motion. When the state objected in 1994 to D'Amario's discovery request, Rule 11, as it then existed, was modeled after its pre–1983 federal counterpart.[6] In 1994 the text of Rhode Island Rule 11 read as follows:

"Every pleading of a party represented by an attorney shall be personally signed by at least one (1) attorney of record * * *. The signature of an attorney constitutes a certificate by the attorney that he or she has read the pleading; that to the best of his or her knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay."

■ Although an objection to a discovery request is not a pleading,[7] it could be argued

---

4. D'Amario essentially claims that the statute of limitations was tolled in this case to allow him to bring this cause of action some eighteen years after allegedly suffering his injuries. However, the tolling of the statute of limitations does not affect the date when the cause of action arose for purposes of the applicability of § 9–29–21.

5. Although the 1995 amendments to the Superior Court Rules of Civil Procedure are generally applicable to all actions pending on September 5, 1995, the amended rules should not be applied retroactively when, as here, it "would work injustice" to do so. *See* Superior Court Order dated June 12, 1995 ("These amendments [to the civil procedure rules] shall be effective on September 5, 1995, and shall govern all proceedings in civil actions thereafter commenced and also all further proceedings in actions then pending, *except to the extent that in the opinion of the court such application in a particular action pending when the amendments take effect would not be feasible or would work injustice, in which event the former procedure applies."* (Emphasis added.)). Since Rule 26(f) was not in existence when the state signed its objection, for this reason alone it "would work injustice" to hold the state to discovery-certification standards that had not yet even been adopted in the Superior Court.

6. Rule 11 of the Federal Rules of Civil Procedure had been amended in 1983 to apply to pleadings, written motions, and other papers. The rule also added the requirement that the signer of a pleading, written motion, or other paper conduct a reasonable inquiry into both the facts and the

law to satisfy the affirmative duty imposed by the rule. *See* Fed.R.Civ.P. 11 advisory committee's notes. However, these two changes in the federal rule were not added to and did not appear in the Rhode Island version of Rule 11 until its amendment in September 1995. Therefore, the federal objective standard for alleged Rule 11 violations was "not utilized by this court or mandated by statute" when the state filed its objection to D'Amario's discovery request. *See Forte Brothers, Inc. v. Ronald M. Ash & Associates, Inc.,* 612 A.2d 717, 724 (R.I.1992) (applying a subjective "good faith" standard to alleged violations of the pre–1995 Rule 11).

7. The 1994 version of Rule 7(a) of the Superior Court Rules of Civil Procedure provided:

"There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party or additional party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party or additional party complaint is served. *No other pleading shall be allowed,* except that the court may order a reply to an answer, a third-party answer, or an additional party answer." (Emphasis added.)

*Cf. United States v. Newbury Mfg. Co.,* 123 F.2d 453, 454 (1st Cir.1941) (comparing Federal Rules 7(a) and 12(b) and holding that a motion to dismiss a complaint is not a responsive pleading for purposes of amending the complaint pursuant to Federal Rule 15).

that Super. R. Civ. P. 7(b)(2) [8] extended the reach of former Rule 11 to include the signing of objections to discovery requests. *See Bergeson v. Dilworth,* 132 F.R.D. 277, 287 (D.Kan.1990) (holding that the term "other papers" as defined in Federal Rules 7(b)(2) and 11 refers to "discovery motions, interrogatories and requests for production and admissions and the responses thereto"). But even if former Rhode Island Rule 11 were applicable and even if we were to assume that the motion justice based his sanctions ruling thereon,[9] the version of the rule in existence at the time the state certified its objection to D'Amario's discovery request would not support an award of sanctions in these circumstances. The pre–1995 version of Rhode Island Rule 11 required only that the state have subjectively believed that it had "good ground to support" its objection to D'Amario's discovery request and that its objection was not interposed for delay. *See Forte Brothers, Inc. v. Ronald M. Ash & Associates, Inc.,* 612 A.2d 717, 724 (R.I.1992) ("the subjective standard remains applicable" when analyzing alleged pre-September 1995

Rule 11 violations). Here, there was no evidence that the state had failed to satisfy either one of these requirements. On the contrary, the state's objection was solidly grounded, as was determined on several occasions by other Superior Court motion justices when they denied D'Amario's previous attempts to compel production of the requested documentation. Therefore, even assuming former Rule 11 applied to this case, the state would not be subject to sanctions because D'Amario failed to prove any violation by the state of former Rule 11's subjective good-faith standard.

■ Moreover, in our judgment, the state would not have been subject to sanctions even if the current versions of Rhode Island Rules 11 and 26(f) (effective September 5, 1995) were applicable. First, Rule 26(f) was enacted in 1995 specifically to address, among other things, the signing of discovery objections. Thus, Rule 26(f) and not Rule 11 would be the applicable rule for assessing compliance with certification standards when this type of document is signed.[10] Second,

8. The 1994 version of Rule 7(b)(2) of the Superior Court Rules of Civil Procedure provided that "[t]he rules applicable to captions, signing, and other matters of form of pleadings apply to all motions and other papers provided for by these rules."

9. From our review of the Superior Court record, it is unclear upon what rule, statutory provision, or other basis the motion justice relied in sanctioning the state. However, in a colloquy with D'Amario at the January 31, 1996 hearing, the motion justice did state: "I don't see how Rule 11 sanctions can be applied here. I mean you [D'Amario] lost [on previous attempts to compel production of the Record]." The motion justice then heard further arguments from the parties and decided to impose sanctions anyway. At a February 14, 1996 hearing to determine if the sanctions should be stayed, the motion justice further explained his reasoning for imposing sanctions, yet cited no particular rule or statute as his basis for doing so. The state, in its brief to this court, argues that Rules 11 and 26(f) of the Superior Court Rules of Civil Procedure were inapplicable to the Superior Court proceeding since their certification standards were not added to the rules until September 1995, after the state's 1994 signing of its objection to D'Amario's discovery request. The state maintains that § 9–29–21 should have governed the court's analysis. However, as we have shown, that statute is also inapplicable. Rule 37(a) of the 1994 Superior Court Rules of Civil Procedure allowed the court

to award costs and expenses, including a reasonable counsel's fee, "upon the failure of a party to make discovery as requested under Rule 34." *See also* Reporter's Notes to 1969 Amendment of Super. R. Civ. P. 34 ("'[u]nwarranted objections are made subject to the peril that costs and expenses will be charged against the recalcitrant party or his counsel under Rule 37(a)"). Here, however, the objection was not unwarranted as indicated by the court's denial of D'Amario's previous motion to compel.

10. In 1993, subdivision (d) of Fed.R.Civ.P. 11 was added expressly to exclude discovery requests, responses, and objections from its provisions. However, prior to the amendment of Federal Rule 11, federal courts recognized that Rule 26(g) was the appropriate certification rule to apply with respect to discovery requests, responses, and objections. *See, e.g., United Missouri Bank of Kansas City v. Bank of New York,* 723 F.Supp. 408, 414 (W.D.Mo.1989) (holding that "Rule 11 is not properly used to sanction the inappropriate filing of papers where other rules more directly apply"); *see also In re Yagman,* 796 F.2d 1165, 1187 (9th Cir.1986); Fed.R.Civ.P. 11 advisory committee's notes to 1983 amendment. Because Super. R. Civ. P. 26(f), the state analog to Fed.R.Civ.P. 26(g), specifically addresses the certification of discovery requests, responses, and objections, this is the rule that should be applied to test the certification of discovery requests, responses, and objections that are signed after September 5, 1995.

this is not the type of conduct that would violate Rule 26(f). If a party has a valid objection or a privilege to assert concerning improper discovery requests, it need not first ascertain whether the requested documents exist before presenting such an objection or asserting such a privilege. If a document request is proper and a party interposes an objection that is not well grounded, such conduct is, of course, sanctionable under either Rule 26(f) or Rule 37(a). *See, e.g., Limoges v. Eats Restaurant,* 621 A.2d 188, 190 (R.I.1993) (upholding an award of attorney's fees for discovery violations after the plaintiff twice filed blanket objections to discovery requests, conceded that the objections had been filed with respect to information that was discoverable, and provided the requested documents to the defendants only after the defendants filed motions to compel).

But parties who promulgate improper discovery requests are not entitled to send their victims scurrying to see if the requested documents exist before any objection to such requests can be certified. Nor should they be rewarded by having sanctions imposed on those who timely object to such requests before conducting an unnecessary search-and-review mission, much less disclosing the results of same to the requesting party. The reason this is so is that the determination of and the identification to an opposing party of whether and to what extent certain requested documents or information exists can itself be of use and value to litigants who have improperly requested such information. In such circumstances, disclosure would compromise the very purpose of asserting the objection in the first place. Moreover, responding to discovery requests can also entail an expensive and time-consuming search for and review of large quantities of records to determine which documents are subject to

the request and which are not and to ascertain whether any privileged documents have been requested. Before parties are put to the burden of complying with such requests, they are entitled to present valid and timely objections to doing so, subject always to the risk of paying for the other side's costs under Super. R. Civ. P. 37(a) if the court overrules their objections, orders the documents to be produced, and finds that the objection was not substantially justified after all and that there are no "other circumstances [that] make an award of expenses unjust." Furthermore, neither the discovery rules nor any other applicable rule or statute requires a party to undertake such a document search or to disclose the existence *vel non* of this type of improperly requested document before presenting an appropriate objection.[11] For these reasons we conclude that the motion justice abused his discretion in imposing sanctions against the state in this case under any discovery rule or statute that might possibly have been applicable to this situation.

## II

### The Extension of *In Forma Pauperis* Benefits

■ We now turn to D'Amario's request for an extension of his *in forma pauperis* benefits and conclude that the motion justice also erred in granting D'Amario a $400 extension without requiring him to provide any evidence of his inability to pay for these costs. This court has held that "[i]n every instance [when *in forma pauperis* benefits are sought] the burden of proving indigence in relation to the payment of the required filing fee or *other element of cost* is upon the party seeking such relief." (Emphasis added.) *Silvestro v. Almonte,* 484 A.2d 900, 903

---

11. A party who withholds information that is "otherwise discoverable" by claiming that it is privileged or subject to protection as trial preparation material is required under Super. R. Civ. P. 26(b)(5) to make this claim expressly and to describe "the nature" of the documents not produced or disclosed in a manner that will enable other parties to assess the applicability of the privilege or protection that is claimed. But even if this rule, which was not in existence when the state filed its objection, had been applicable to the state's objection (because, in part, it was

asserting a privacy privilege on behalf of other IMH patients), the state satisfied this requirement because it made its objection expressly, the information objected to was determined by the Superior Court not to be "otherwise discoverable," and the documents in question had been described in the request itself with sufficient particularity to enable all parties and the court to assess the applicability of the state's objection to the documents requested without further specification or identification and without ascertaining the existence *vel non* of the requested documents.

(R.I.1984). We believe that a requested extension of *in forma pauperis* benefits for the purpose of conducting future depositions is another element of cost that is subject to the rule set forth in *Silvestro*. Therefore, at the hearing conducted on January 31, 1996, D'Amario was required to prove that he was unable to fund the cost of taking additional depositions. Since the motion justice failed to require proof of D'Amario's financial status at the time of the requested extension of *in forma pauperis* benefits and because D'Amario offered no evidence regarding his indigence at this point in the proceedings, the court's extension of *in forma pauperis* benefits was improper.

In these circumstances we would normally remand the case to the Superior Court to hold a hearing on this issue. However, on October 8, 1996, D'Amario entered into a plea agreement with the state on an unrelated criminal charge whereby he agreed to a conditional dismissal of this action. The dismissal will be with prejudice and will become final unless a licensed Rhode Island attorney enters an appearance in this action on D'Amario's behalf within sixty days after October 8, 1996. Therefore, upon remand of this case to the Superior Court, any hearing to determine D'Amario's financial status shall be stayed pending any action taken on D'Amario's part to reinstate the present action. Should no appearance be entered on or before December 9, 1996 (when the sixty-day period set forth in the plea bargain expires), the issue of extending D'Amario's *in forma pauperis* benefits will become moot, thereby negating any need for a hearing.

However, if an appearance is entered on D'Amario's behalf on or before December 9, 1996, we would further require that in addition to determining D'Amario's financial eligibility for an extension of *in forma pauperis* benefits, the Superior Court should also take into consideration D'Amario's past conduct, both in this case and in other litigation, with respect to filing frivolous lawsuits and other inappropriate legal documents.[12] We believe that to avoid further abuse of the judicial system, this additional factor should be considered in determining whether D'Amario's *in forma pauperis* benefits should be extended and, if so, whether there are any additional restrictions and conditions that should be imposed on D'Amario's conduct of future discovery, if any extension were to be granted at all.

▊ This court has recognized that the scope of judicial discretion when awarding *in forma pauperis* benefits "'should be exercised with a view to confine the privilege most strictly to those who, having a substantial right to enforce or preserve, are absolutely unable otherwise to so do, and who, once having been admitted to proceed *in forma pauperis*, diligently pursue a course free from * * * vexatious conduct of any kind.'" *Silvestro*, 484 A.2d at 902–03. In *Silvestro* we held applicable this principle to the initial waiver of filing fees. *Id.* at 904. We see no reason not to extend this requirement to other areas of litigation, such as the taking of depositions, the issuance of subpoenas, and the filing of other discovery requests, legal memoranda, and motions, if an indigent party seeks public financial support for his or her litigation costs in these situations. In addition, we believe that the reasoning of the *Silvestro* case is not confined to an initial waiver of fees or to an initial distribution of *in forma pauperis* benefits but rather should also be applied to a situation like this one in which a litigant seeks an extension of *in forma pauperis* benefits. After the initial distribution of such benefits, a litigant is required to use them "'free from * * * vexatious conduct of any kind.'" *Id.* at 902–03. To determine whether the litigant is entitled to further benefits upon request, a court should assess the past conduct of the litigant with respect to how the bene-

**12.** On February 6, 1996, in a case unrelated to the present action, a Superior Court justice ordered that D'Amario not be allowed to file papers in any of his existing criminal appeals and/or post-conviction relief matters without further leave of the Superior Court. In addition, the First Circuit Court of Appeals, in a February 1, 1996 order, recently declared a lawsuit filed by D'Amario to be "obviously frivolous." Finally, in a twenty-seven-count post-conviction petition filed in Superior Court in February 1996, D'Amario, among other things, describes at great length a plot to frame him, allegedly headed by some of the justices of this court, as well as a federal judge and a current United States Supreme Court justice.

fits were used in the underlying lawsuit and, if relevant, how the litigant has behaved in other cases when he has taken depositions or conducted other litigation activity that is the same as or similar to that which is being requested in the action before the court.

Therefore, should a hearing be necessary in this case, a Superior Court justice will be required to hold a two-part inquiry. First, the court should determine whether D'Amario satisfies the financial-need requirements to be eligible for an extension of *in forma pauperis* benefits. Second, if D'Amario proves himself to be eligible, the hearing justice should then determine whether, on the basis of D'Amario's past conduct in this case and in other litigation, he has and will continue " 'diligently [to] pursue a course free from * * * vexatious conduct of any kind' " if he is granted an extension of such benefits to take further depositions. Any doubts about this second determination should be resolved in favor of denying such a requested extension of benefits, especially if the recurrence of past discovery and other litigation abuses is not likely to be avoided or controlled by the imposition of appropriate additional restrictions and conditions on any extension of *in forma pauperis* benefits.

For the foregoing reasons the petition for certiorari is granted, the order of the Superior Court is quashed, and the papers of this case are remanded to the Superior Court with our decision endorsed thereon.