[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Decision
Before the Court is Plaintiff Elizabeth Donegan's ("Plaintiff") amended motion for sanctions and expenses incurred compelling the production of certain documents. At issue is the often deployed pretrial discovery tactic of seizing upon a narrow but objectionable aspect of an otherwise legitimate discovery request in order to avoid providing any response at all, until compelled to do so through added proceedings or the threat of added proceedings.
Specifically at issue are Plaintiff's requests for the "complete copy of the credentials files" of defendant doctors Neil Jackson and Laura Steinhandler, a/k/a Laura Hanley. These requests were numbered 5 and 6, respectively, and were part of a larger discovery effort. Specifically, requests 5 6 were but two items contained in a "Request for Production of Documents" served on defendant Women Infants Hospital ("Women 
Infants") on March 7, 2003, and filed in the court records on March 10, 2003. On the same date, Plaintiff also propounded various interrogatories upon defendants Neil Jackson, Laura Steinhandler and Women Infants. Representing all three of the defendants, defense counsel of record, David Carroll, for the law firm Roberts, Carroll, Feldstein, Pierce, Inc., responded to the Request for Production by objecting, on April 10, 2003, to all but 3 of the 15 propounded requests. Similarly, on April 15, 2003, Mr. Carroll objected to many of the interrogatory questions.
With respect to Request numbers 5 and 6 — the requests for the two credentials files — Mr. Carroll objected, seizing upon the word "complete" and stating as a basis for his objection that "complete compliance with this Request for Production may well compromise the peer review privileges and other privileges acknowledged under the law." Mr. Carroll made no attempt to provide even a rudimentary explanation of what or how the claimed peer review privilege applied or what "other privileges" were meant. Nor did he indicate any willingness to produce those documents contained in the credentials files but which were not privileged. Mr. Carroll's objections to the other propounded requests for production were of similar caliber and, although he ultimately responded to those other requests, the history of their production is nearly as wearisome as that of the documents covered by requests numbered 5 and 6.[1]
Of equal importance, many of the objections Mr. Carroll made to the interrogatories rested not upon any substantive failure in the question, but upon Plaintiff's requests that the answering parties respond in "complete detail." According to Mr. Carroll, this requirement rendered the question broad and harassing. Thus, despite the fact that a party must answer every interrogatory "to the extent the interrogatory is not objectionable," S.Ct.R.Civ.P. 33(a), and must show specifically how each discovery request is burdensome (the "mere statement by a party that the interrogatory [or request for production] was `overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection." St. Paul Reinsurance Co. v. Commer. Fin. Corp., 198 F.R.D. 508,511-12 (N.D. Ia. 2000) (citing Josephs v. Harris Corp., 677 F.2d 985, 992
(3d Cir. 1982) (quoting Roesberg v. Johns-Manville Corp., 85 F.R.D. 292,296-97 (E.D. Pa. 1980)). See also Oleson, 175 F.R.D. 560 at 565 ("[t]he litany of overly burdensome, oppressive, and irrelevant does not alone constitute a successful objection to a discovery request") (citation omitted). "On the contrary, the party resisting discovery `must show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive.'" Id.), Mr. Carroll again seized upon the term "complete" and refused to give any answer at all.
As to the interrogatories that Mr. Carroll deemed unobjectionable, he obtained an extension of time until May 15, 2003. Plaintiff later stipulated to a further extension until June 15, 2003. Although having already exceeded the 40 day response period mandated by S. Ct. R. Civ. P. 33(a), Mr. Carroll filed a second motion for extension of time on June 17, 2003, to which Plaintiff objected on June 23, 2003. On that date, Plaintiff also filed a Motion to Compel more responsive answers to both the objected interrogatories and the requests for production.
In response to Plaintiff's Motion to Compel, Mr. Carroll filed more responsive answers to Plaintiff's interrogatories on June 23, 24, and 27. And, on September 8, 2003, he provided a Supplemental Response to Plaintiff's Request for Production of Documents. See supra, n. 1. This time Mr. Carroll provided a privilege log in response to the requests for the defendant Doctor Jackson's credentials file. The log, however, was woefully inadequate. The log presented listed 47 documents by title and asserted the peer review privilege for most; for others he merely stated that portions were redacted "on grounds of confidentiality." Most of the document titles were not self-explanatory and thus failed to provide any description that could "enable other parties to assess the applicability of the privilege or protections." S. Ct. R. Civ. P. 26(b)(5). Further, Mr. Carroll again failed to provide any log whatsoever as to Doctor Steinhandler's file.
Given the inadequacy of this supplemental response, and after a long and arduous series of extensions to Women and Infants' original 40-day response period, Plaintiff was forced to bring a second Motion to Compel Production on January 20, 2004. Plaintiff requested certain specific documents and more comprehensive logs as to any materials as to which Women and Infants continued to object. On January 21, 2004, Mr. Carroll filed an objection and asserted that "the supplemental response made, together with the privilege log, is appropriate and in good faith."
The Plaintiff's second Motion to Compel Production was heard on February 4, 2004. Mr. Carroll did not appear but, instead, sent one of the firm's associate attorneys to defend the motion. At the time of the hearing the young associate had no choice but to concede that he had been given insufficient facts and information to support the claim of privilege. As a result, this Court granted Plaintiff's motion and ordered that Women and Infants produce the complete credentials files of Doctors Jackson and Steinhandler within 20 days thereafter.
On February 12, 2004, Mr. Carroll filed a Motion for Reconsideration or, in the alternative, for a Stay of Proceedings pending appeal, pursuant to the Supreme Court Rules of Appellate Procedure. Art. I, Rule 8. Plaintiff filed an objection on February 20, 2003 and also moved for an award of expenses incurred in bringing the motion to compel, pursuant to S. Ct. R. Civ. P. 37(4)(a).[2] Plaintiff also sought sanctions pursuant to S. Ct. R. Civ. P. 11 — thereby contending that Mr. Carroll's Motion for Reconsideration was not based upon a reasonable inquiry, and was neither "well grounded in fact" nor "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law" and that, further, it was interposed for an improper purpose. S. Ct. R. Civ. P. 11.
These matters were heard on March 1, 2004 when, once again, it was Mr. Carroll's associate who appeared at the hearing and not Mr. Carroll. At that time, it became apparent that Mr. Carroll had failed to supply either Plaintiff's counsel or his associate with new privilege logs providing the detail required by S. Ct. R. Civ. P. 26(b)(5) and, once again, that the associate lacked the information needed to support Mr. Carroll's motion for reconsideration — notwithstanding that he had been sent to press it. (Tr. at 1-2 (March 1, 2004)). Further, the associate, after deploying considerable skill in dodging the Court's inquiry, was forced to admit that Mr. Carroll and neither filed nor prepared a petition for writ of certiorari even though nearly a month had passed since the hearing at which the documents were ordered produced. Id. at 5-6. Nonetheless, and much to the frustration of Plaintiff's counsel, the Court stayed its Order of February 4, 2004 and continued the matter until May 3, 2004, to give Mr. Carroll an additional two months to prepare adequate logs or to petition for writ of certiorari. Id. at 6, 9.
Not surprisingly given the record in the case thus far, Mr. Carroll did not file any petition for writ of certiorari but, instead, on the Friday before the Monday, May 3 hearing, delivered new privilege logs to the Plaintiff. During the Monday hearing, which was attended by the associate and not Mr. Carroll, it became evident that the number of documents contained in the two credentials files and which were claimed to be privileged had decreased dramatically, from approximately 125 to approximately 25. (Tr. at 5 (May 3, 2004)). As to the remaining documents for which privilege was still claimed, this Court allowed Plaintiff time to review the revised log and did not insist on enforcing its original Order, despite the many maneuverings in this matter which supported a finding of waiver, see infra, and despite that this revised log was not provided until over a year after Plaintiff's original production request.
On June 1, 2004, Plaintiff, citing S. Ct. R. Civ. P. 11 and 26(f),[3]
amended her sanctions motion to include the cost incurred in bringing her Motion to Compel and in Objecting to Defendant's Motion for Reconsideration. Plaintiff argued that Mr. Carroll's original objection violated S. Ct. R. Civ. P. 26(f) and, also, that Mr. Carroll's Motion for Reconsideration was made in bad faith and for an improper purpose, as evidenced by the fact that Mr. Carroll supplemented Women and Infants' response by providing most of the documents previously claimed to be privileged even after filing the motion. Plaintiff asserted that Mr. Carroll's initial and continued failure to provide the requested documents or a proper privilege log demonstrated the absence of a reasonable inquiry and constituted "at the least, an indifference to Plaintiff's rights and, at worst, an attempt to withhold discoverable information." (Pl. "Memorandum in Support of Amended Motion For Sanctions" at 3 (Jun 1, 2004)). She also pointed out that Mr. Carroll's Motion for Reconsideration was necessitated by his own conduct in refusing to make a proper response in the first place which, in turn, placed him in the self-inflicted position of having subjected his client to an adverse ruling concerning its privileged documents. Finally, she argued that by failing to make a good faith effort to support his motion at the May 3 hearing, Mr. Carroll used the motion as an instrument of further delay and forced Plaintiff to needlessly expend additional time and money to appear in court at a later date. Id.
Mr. Carroll filed an objection to this amended motion on June 4, 2004. He argued that the original objection was "correct and appropriate" because "[b]y its very nature, a credentials file . . . will contain reports and/or records of one or more peer review committees." (Def. "Objection to Plaintiff's Amended Motion for Sanctions" at 1-2 (Jun. 4, 2004)). Thus, Mr. Carroll took the position that his failure to provide a privilege log was acceptable because Plaintiff ought to have figured out that his objection was meant to refer only to those documents which were, indeed, privileged — as opposed to the other 100 or so documents the existence of which he avoided disclosing and which he did not produce until faced with having to defend his objection by producing a legitimate log.
When the matter was heard again on June 7, 2004, Plaintiff, having now had an opportunity to review the privilege log, sought only one remaining document group which related to Dr. Steinhandler's surgical skills and was entitled "Surgical Skills Evaluations." There was some dispute, however, as to whether the document was protected by peer review privilege. Once again, Mr. Carroll assigned the task of defending the motion to his young associate who asserted that the document was prepared by the something the hospital called its "Resident Evaluation Committee." However, he could not state whether it was prepared by Dr. Steinhandler's peers or clinical instructors, for what purpose, or to whom it was disseminated. (Tr. at 11 (Jun. 7, 2004)). Further, though the associate initially represented to the Court that the document was merely "statistical," it became clear that the document also includedsubjective comments by various Hospital personnel. Id. at 8-10. Despite Mr. Carroll's unrelenting failure to support the claimed privilege in a proper manner, this Court reserved judgment as to the "Surgical Skills Evaluations" at that juncture, instead providing Mr. Carroll with yet another opportunity to defend his asserted privilege.[4]
At the June 7 hearing, other illuminating facts were brought to the Court's attention. First, Plaintiff reminded the Court that answers to interrogatories propounded to Dr. Steinhandler had been sent to Plaintiff's counsel unsigned, and Mr. Carroll's associate had represented to the Court that these were soon to be signed. (See Tr. at 7 (May 3, 2003)); Tr. at 2-3 (Jun. 7, 2004)). However, when Plaintiff received a signed copy the Friday prior to the June 7 hearing, the answers had changed. For example, where Dr. Steinhandler had previously answered that she had twice performed hysterectomy with bladder surgery, the interrogatory answer now referred Plaintiff to various documents. Of course, however, an interrogatory answer must refer to the specific documents intended to answer the question, Senn v. Surgidev Corp.,641 A.2d 1311, 1320-21 (1994), as Mr. Carroll was aware, having several times requested this Court to compel Plaintiff to list specific documents in her own interrogatory answers. (See, e.g. Def. Neil Jackson's "Motion to Compel More Responsive Answers to Interrogatories" (Apr. 21, 2003); Def. Women Infants Hospital's "Motion to Compel More Responsive Answers to Interrogatories" (Apr. 21, 2003); Def. Laura Steinhandler's "Motion to Compel More Responsive Answers to Interrogatories" (Apr. 21, 2003)).[5] More disturbingly, Plaintiff indicated, was that the documents in which she was directed to find Dr. Steinhandler's previous experience had been partially blackened-out so that all of the dates prior to December 1999 — the date of Plaintiff's alleged injury — were not readable. (Tr. at 5 (Jun. 7, 2004)).[6]
Now before the Court for decision is Plaintiff's June 4, 2004 Amended Motion for Sanctions, in the form of attorney's fees. Although the motion was scheduled for hearing on June 7, Mr. Carroll did not appear to defend his objection that day nor did he request a continuance in advance of the hearing date. Instead, Mr. Carroll once again sent his hapless associate into the fray to request a continuance until such time as it was more convenient for Mr. Carroll appear — thus requiring Plaintiff's counsel to attend yet another hearing. When Mr. Carroll finally materialized on June 25, 2004, he appeared in the company of his own attorney. Through his attorney, Mr. Carroll repeated his objection that the claims of privilege were complete and made in good faith. Also through his attorney, Mr. Carroll cross-examined Plaintiff's attorney, Laura Harrington, regarding the basis of the expenses she incurred in bringing the motion to compel production.
 Analysis A) Mr. Carroll's April 10, 2003 Assertions of Privilege Were In Violation of Rules 26(b)(5) and 26(f)(1) (2)
Our Superior Court Rules of Civil Procedure 26(b)(5) states that:
 "[w]hen a party withholds information otherwise discoverable under these rules by claiming that it is privileged . . . the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."
"A party who withholds information that is `otherwise discoverable' by claiming that it is privileged or subject to protection as trial preparation material is required under S. Ct. R. Civ. P. 26(b)(5) to make this claim expressly and to describe `the nature' of the documents not produced or disclosed in a manner that will enable other parties to assess the applicability of the privilege or protection that is claimed."D'Amario v. State, 686 A.2d 82, 86 n. 11 (R.I. 1996). The objecting party must be specific enough in its objections to support its privilege and to provide a means to assess the claim. Pursuant to S. Ct. R. Civ. P. 37(d) — which repeats the provisions of its federal counterpart almost verbatim — if a responding party fails to adequately state the reason for an objection, he or she may be held to have waived the objections, including those based on privilege. See 8A Wright and Miller, Federal Practice andProcedure §§ 2016.1, 2213 (1994); Rivera v. Kmart Corp., 190 F.R.D. 298, 300
(D.P.R. 2000) (citing Marx v. Kelly, Hart Hallman, P.C., 929 F.2d 8, 12
(1st Cir. 1991). While courts assessing the adequacy of a privilege log "should avoid hair-trigger findings of waiver, the party relying on the privilege needs to provide significant backup information." Id. at § 2213, p. 428. Thus, at the very least, failure to initially provide privilege logs can entitle the opposing party to costs incurred in bringing a motion to compel, pursuant to Rule 37(a)(4)(A). See PublicService Co. of NH v. Portland Natural Gas 218 F.R.D. 361 (D.N.H. 2003); S.Ct.R.Civ.P. 26(f)(1); Taydus v. Cisneros, 902 F. Supp. 288, 297
(D.Ma. 1995) ("[a] party who withholds privileged documents that lie within the scope of Rule 26(a)(1)(B) without providing a brief description of the documents is subject to sanctions under [Rule 37]"). Additionally, where counsel completely fails to provide any privilege log, sanctions may be imposed pursuant to S. Ct. R. Civ. P. 26(f)(1).[7]
Here, Mr. Carroll objected to Plaintiff's requests for the credentials files of certain doctor-defendants on the grounds of peer review privilege. Mr. Carroll posited these objections without explanation and without identifying the nature of documents that defendant may have had in its possession, which were allegedly included in the requested credential files, and to which the claimed privilege attached. Mr. Carroll, instead, put Plaintiff to the onerous task of pursuing the matter via a motion to compel and, thereafter, of objecting to and appearing at court on a motion for reconsideration that Mr. Carroll made no attempt to support and which motion only led to further delays in Plaintiff's obtaining the many documents that were not subject to privilege. It was thus Mr. Carroll's unsubstantiated claims of privilege — clearly posited in violation of Rule 26(b)(5) and, thus, signed in violation of Rule 26(f)(1) — as well as his subsequent decision to interpose the motion for reconsideration — that caused Plaintiff to incur unnecessary expenses while attempting to pursue her civil remedies for an alleged instance of medical malpractice. Mr. Carroll's continued failure to provide privilege logs, or to provide a means to evaluate the claim at the various hearings on this matter, exacerbated those expenses.
It is apparent that, having voluntarily turned over most of the documents claimed to be privileged, Mr. Carroll, at best, made little or no inquiry into the contents of the requested credentials files prior to asserting the privilege claim. Further, even crediting Mr. Carroll's assertion that these files invariably contain some privileged material, it was incumbent upon him to provide a log of these materials in order that opposing counsel could assess the applicability of the privilege and so that this Court could, if required, excise the materials[8]
Plaintiff, having no means of knowing the contents of the files, could not herself specify the privileged materials and thereby exclude them from her request. Moreover, assuming that Plaintiff was even aware that many similar files contain protected materials, it is a defendant's obligation and burden to make and support a claim of privilege. See,e.g, Morretti v. Lowe, 592 A.2d 855 (R.I. 1991). It was not incumbent upon Plaintiff, as the requesting party, to anticipate the presence of privileged materials and to include a general exclusion within her request. Moreover, even if Plaintiff had included exclusionary language, Women and Infants was still required to meet its burden of establishing privilege as to specific documents and, to that end, to comply with S. Ct. R. Civ. P. 26(b)(5).[9]
Aside from the express requirement of privilege logs, every counsel is charged with conducting discovery in good faith. See S.Ct.R.Civ.P. 26(f); Limoges v. Eats Restaurant, 621 A.2d 188, 190 (R.I. 1993). Certainly, counsel is also charged with the duties of diligence and vigorous advocacy of a client's interests; therefore, this Court recognizes the oftentimes laudable resort to a myriad of civil filings and pleadings, the use of which demonstrates to opposing counsel one's conviction in their client's cause. Nevertheless, baseless objections and claims of privilege which provide no explanation serve little purpose than to burden opposing counsel with the unnecessary expense of seeking compliance informally — as required by S. Ct. R. Civ. P. 37(a)(2), — and then by a motion to compel. There is nothing in our Rules of Civil Procedure or Rules of Professional Conduct that impliedly or expressly condones the use of such objections as tactical measures.[10] Rather, such "tactics" merit sanctions pursuant to S. Ct. R. Civ. P. 26(f)(1) and (2), which provide in relevant part:
 "The signature of the attorney or party constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, the request, response, or objection, is:
 (1) Consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.
 (2) Not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."
An attorney demonstrates bad faith when he causes opposing counsel to invest unnecessary time or to incur expenses in order to defend against a baseless objection, or to investigate the basis of an unsubstantiated claim of privilege. See Limoges v. Eats Restaurant, 621 A.2d 188, 190
(R.I. 1993) ("`bad faith' that justifies an award of attorney's `fees may be demonstrated by showing that a [party's] obstinacy in granting a plaintiff his clear legal rights necessitated resort to legal action with all the expense and delay entailed in litigation'") (quoting Quill Co.v. A.T. Cross Co., 477 A.2d 939, 944 (R.I. 1984)). Even absent a "tactical" mindset or other improper intent, because an attorney's signature constitutes a certification that the statements and contentions made were "formed after a reasonable inquiry," S.Ct.R.Civ.P. 26(f), it is a violation to submit an objection that is made without proper inquiry.
Several factors evidence that a pattern of bad faith and dilatory tactics, in fact, were at the root of Mr. Carroll's claims of privilege with respect to the credentialing files. First, 12 of the 15 of Plaintiff's Requests for Production were originally objected to, yet these were voluntarily supplemented when Plaintiff attempted to enforce her discovery rights via a motion to compel. Second, many of the interrogatories served on the several defendants were met with frivolous objections in violation of the Rules of Civil Procedure and inconsistent with the spirit of discovery. As indicated earlier in this decision, many of the interrogatories, for example, sought that answers be provided in "complete detail." Rather than provide any response, Mr. Carroll seized upon this language and objected that, because of it, the interrogatories were broad and harassing. Thus, these answers violated S. Ct. R. Civ. P. 33(a)'s requirement that a party answer "to the extent the interrogatory is not objectionable" as well as S. Ct. R. Civ. P. 26(b)(1)'s requirement that the objecting party specifically substantiate objections of undue burden. Again, only after threatened with court action did Mr. Carroll provide more responsive answers. Prior to Plaintiff's incurring expense to force compliance, Mr. Carroll's resistance amounted to a complete failure to provide discovery.[11]
A third indication of bad faith in these privilege claims is Mr. Carroll's overall course of conduct in responding to the Plaintiff's legitimate discovery requests including his amendment to Dr. Steinhandler's unsigned interrogatory answers. The amendment to the interrogatory answers were not only unresponsive, but were clearly made in bad faith — Mr. Carroll having previously evidenced a familiarity with the proper means of answering interrogatories when he requested that this Court compel more responsive answers to those served upon Plaintiff. Seesupra, n. 4. Although Plaintiff has not moved for sanctions specifically in response to Mr. Carroll's conduct having to do with discovery violations other than with regard to Requests 5 and 6, that conduct is probative of Mr. Carroll's motivation in withholding the contested documents and is relevant to this Court's determination of what, if any, should be the sanction.
These instances of discovery misconduct, while not directly involving the claims of privilege at issue in Requests 5 and 6, demonstrate a course of conduct throughout this case whereby Mr. Carroll, at worst, has attempted to employ dilatory tactics and subtle and improper methods of litigatory harassment — both in violation of S. Ct. R. Civ. P. 25(f)(1),(2) — or, at best, has unreasonably derelicted an attorney's responsibility to opposing counsel, and to his own client, to conduct discovery with reasonable inquiry into the facts and into what constitutes a legally permissible basis for and means of objecting. Thus, Mr. Carroll's obstinate failure to provide adequate logs, aside from being in derogation of S. Ct. R. Civ. P. 26(b)(5), evidences that the claim of privilege was a part of this course of conduct designed to avoid and deter legitimate discovery requests. Mr. Carroll failed to substantiate his claim of privilege initially and, moreover, he plainly had not prepared the associate who appeared on his behalf at the hearings in any manner that one would reasonably expect of a party objecting in good faith to be prepared. The associate was neither equipped with minimally adequate privilege logs nor given the information necessary to defend the objection via oral argument.
"Modern instruments of discovery serve a useful purpose. . . . They together with pretrial procedures make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent."[12] United States v. Procter Gamble Co., 356 U.S. 677, 682, 2 L.Ed. 2d 1077, 78 S. Ct. 983 (1958). Mr. Carroll, however, repeatedly delayed compliance with his discovery obligations by failing to provide opposing counsel and this Court with adequate evidence to substantiate its claims, despite ample opportunity to do so at the several hearings on the matter. Both the original objection and his continued failures to produce or to substantiate the claim of privilege together with his quest for the reconsideration needed to extricate Mr. Carroll from a situation smacking of his own professional negligence — all of which required numerous hearings — necessitated further and unnecessary expenses for Plaintiff. Only once Plaintiff incurred those expenses did Mr. Carroll begin to comply with his discovery obligations as counsel for defendant — thus giving rise to an inference that Mr. Carroll's conduct was intended to have a deterrent effect on this Plaintiff's continued quest for discovery.
Accordingly, this Court finds that Mr. Carroll's objections were made in violation of the plain language of S. Ct. R. Civ. P. 26(b)(5), were signed in violation of S. Ct. R. Civ. P 26(f)(1), were not substantially justified, and, as evidenced by the overall history of his compliance with the discovery requests at issue, were motivated by improper purposes and bad faith thus being posited in violation of S. Ct. R. Civ. P 26(f)(2).
 B) Mr. Carroll's Actions Warrant Sanctions
In addition to the foregoing, Mr. Carroll's ill-considered machinations warrant sanctions for reasons other than merely wasting Plaintiff's time and resources.
First, as indicated above, Mr. Carroll put his own clients at risk by subjecting them to a discovery order requiring the production of documents for which there was a legitimate claim of privilege. Given Mr. Carroll's unsupported objections, it was no abuse of discretion for the Court to have ordered production of the documents at issue. Nor would it have been an abuse of discretion for the Court to have enforced that order, given the record in the subsequent proceedings. In fact, a less tolerant jurist well may have declined to exercise such prudence in the defendant's favor as this one exercised. Furthermore, for Mr. Carroll to have charged his client legal fees for his and his associate's many hours spent in dodging legitimate discovery requests, as he presumably did, all the while exposing his client to unnecessary disclosure of privileged materials is troubling. So, too, Mr. Carroll acted contrary to his role as an officer of the Court and one who is bound to uphold the spirit of the rules of this Court and he did so by burdening not only the Plaintiffs and his client but also the Court and the numerous other litigants who appear before it. Mr. Carroll's conduct is especially disturbing in light of the medical community's purported belief that it is the victim of avaricious plaintiff's lawyers, shoddy jurisprudence and stalled justice.[13]
Of no less importance in determining whether or not Mr. Carroll should be sanctioned, is the burden that Mr. Carroll placed upon his junior associate by sending that young lawyer into the courtroom where he was required to jeopardize his own standing and credibility in defending the indefensible. Similarly to be considered is the example that Mr. Carroll, as a senior member of the trial bar, set for the younger practitioners who frequent the motion calendars of the Superior Court. Mr. Carroll's course of conduct in this case reflects a pattern of attempting to avoid, hinder and delay legitimate discovery requests and to overburden and harass opposing counsel purely as a tactical maneuver and, unquestionably, sets the worst of examples.
Finally, Mr. Carroll is no stranger to S. Ct. R. Civ. P. 26(b)(1), 26(f), 37(a)(4)(A) and 11. As indicated in a decision, of even date herewith and filed in the matter of Elena Cipriani et als v. Migliori et als PC 02 6206, now pending before this Court, Mr. Carroll has been called to task previously for his litigation tactics.
 C) Mr. Carroll's Actions Warrant Sanctions Sufficient to Deter Comparable Conduct
Seemingly, it should be axiomatic that while every legitimate objection may and ought to be made, a party should not be permitted to cast blanket and unsubstantiated objections in the hope that the opposing party will be unable or unwilling to meet the challenge of pursuing the matter further, either because of an ignorance of the law or facts, or because of a lack of resources or from sheer frustration with the process. For this reason, in addition to the ones already stated, Mr. Carroll's conduct warrants sanctions sufficient to deter comparable conduct.
In fashioning a sanction Courts are permitted to use a wide range of alternative possible sanctions for violation of the discovery rules.Doering v. Union County Board of Chosen Freeholders et al., 857 F.2d 191, 194 (3rd Cir. 1988). This Court is reminded, however, to impose the least sanction adequate to effectuate the purpose of the rule. Id; Young v.City of Providence, 301 F.Supp.2d 187, 197 (D.C.R.I. 2004.) While the rule presently directs the court to limit sanctions to "what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated," each judge is largely free to impose the penalty of his or her choice. Thomason v. Lehrer, 182 F.R.D. 121, 131
(D.N.J. 1998); Lett v. Providence Journal Company, 798 A.2d 355, 368
(R.I. 2002) (A trial justice must have broad discretion to choose appropriate response to any fraudulent conduct committed by litigants); See generally, 5A Wright Miller, Federal Practice and Procedure:Civil § 1336.3 (2004). Thus, the trial court is vested with considerable discretion because of the authority given to the court by Rule 11's use of the word "appropriate." Schulze v. South Main Bank, 837 S.W. 2d 733
(Tex.App. 1992); Fed.R.Civ.P. 11 advisory committee notes to the 1997 amendments (The court has significant discretion in determining what sanctions, if any, should be imposed for a violation . . .)
The appropriateness of a particular sanction is primarily a function to two variables: the facts presented and the court's purpose in penalizing the errant party. Anderson v. Beatrice Foods Co., 900 F.2d 388, 394 (1st
Cir. 1990). Sanctions, under both Rules 11 and 37, serve dual purposes of deterrence and compensation. Id; Lett, 798 A.2d at 368. As such, trial justices must be free to create appropriate remedies to address misconduct that occurs in the court of litigation before them. Lett,798 A.2d at 368. However, the court may also consider past conduct of the offending party when fashioning an appropriate sanction. Lockheed MartinEnergy Systems, Inc. v. Slavin, 190 F.R.D. 449, 459 (E.D. Tenn. 1999). Thus, a court may take into consideration an attorney who has repeatedly and flagrantly behaved in a manner that reflects a callous disregard for the proper and efficient functioning of the court. Id. As well, the court may consider an attorney whose behavior reflects a sense of disrespect for the authority of the judicial system and the obligations of the legal profession. Id. Accordingly, a court may take into consideration the effect of the offending party's behavior on the public. See Id.
Given the history of this case, Mr. Carroll's standing as a senior member of the bar, his history and pattern of engaging in discovery abuses and the negative impact this conduct necessarily has upon the parties, the judicial system and the general public, the Court finds that there is a need to deter Mr. Carroll in the future and to deter others who might be tempted to follow the same path.
 D) Sanctions in the Full Amount of Attorney's Fees and Costs Should be Imposed Upon Mr. Carroll Personally
Despite Women and Infants' initial and repeated failure to provide opposing counsel or this Court with a means to assess its claim of privilege, this Court, out of a respect for Women and Infants' rights, did not impose the sanction of waiver by insisting that the entire credentials files be turned over. Rather, the Court stayed its order and gave Women and Infants further opportunity to defend its legitimate claims of privilege. However, given Women and Infant's attorney's complete failure to initially provide a log, his repeated delays during discovery, his failure to comply with this Court's orders to substantiate the privilege claims with proper logs and his intentions, as evidenced by his overall course of conduct in this case, this Court finds that an award of the full amount of Plaintiff's attorney's fees is warranted as an alternative to imposing the sanction of waiver. The Court further finds that it is Mr. Carroll, not his client, who should bear the expense of those fees and costs.
In addition to authorizing sanctions for a discovery objection that is not warranted by existing law, is motivated by an intent to harass, or is made as a dilatory tactic, S. Ct. R. Civ. P. 26(f) also authorizes a sanction upon the represented party or upon "the person who made the certification." S. Ct. R. Civ. P. 26(f). "An appropriate sanction . . . may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee." Id. These sanctions have a twofold purpose: to deter repetition of the harm and to remedy the harm caused. Cf. Michalopoulos v. C DRest., Inc., 2004 R.I. Lexis 92, 13 (quoting Lett v. Providence JournalCo., 798 A.2d 355, 368 (R.I. 2002).
Furthermore, when a party files a motion to compel production which is granted — or subsequent to which production is voluntarily made — the Court may "require the party . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay the moving party the reasonable expenses incurred in making the motion, including attorney's fees." (Emphasis added). S. Ct. R. Civ. P. 37(a)(4)(A)A sanction of costs will be avoided only if the Court finds that the motion was filed without a good faith effort to obtain the discovery without court action; that the nondisclosure, response, or objection was substantially justified; or that other circumstances make an award of expenses unjust. Id. Rule 37 sanctions are intended to "penalize those whose conduct may be deemed to warrant a sanction and deter those who may be tempted to engage in improper conduct. Fremmingv. Tansey, 626 A.2d 219, 221 (R.I. 1993) (citing National Hockey Leaguev. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643, 96 S. Ct. 2778, 2781,49 L. Ed. 2d 747, 751 (1976) (per curiam)).
Finally, S. Ct. R. Civ. P. 11, provides that the signature of an attorney or a party on a pleading, motion or other paper constitutes a certificate by the signer that he or she has read it and "that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fat and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not imposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." S. Ct. R. Civ. P. 11. S. Ct. R. Civ. P. 11 goes on to authorize any appropriate sanction, which may include an order to pay to the other party . . . the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee." S. Ct. R. Civ. P. 11.
This Court finds that Mr. Carroll's course of objections and claims of privilege, as outlined herein, were not substantially justified and were clearly made without any inquiry into the bases therefore — much less an inquiry grounded in good faith — thus making an award of expenses, including attorney's fees, just. The Court also finds that Mr. Carroll's Motion for Reconsideration or, in the alternative, for a Stay of Proceedings was designed principally to extricate himself from the foreseeable consequences of his earlier improper conduct and was pursued, at least in part, for purposes of further delay and that it, therefore, was filed, certified and pursued for improper purposes — notwithstanding that the net effect of the Court's rulings was to grant that Motion for Reconsideration. The Court finds that Mr. Carroll's conduct as evidenced by the record in this case justifies the imposition of sanctions upon him personally.
"The determination of whether an attorney's fee is reasonable requires particular facts in the form of affidavits or testimony upon which the trial court may premise a decision." St. Jean Place Condominium v.Decelles, 656 A.2d 628 (1995) (citing Colonial Plumbing Heating SupplyCo. v. Contemporary Construction Co., 464 A.2d 741 (R.I 1983)). Plaintiff's attorney, Laura Harrington, has submitted an Affidavit of Expenses in the sum of $4,340.00 for 24.8 hours spent in responding to Mr. Carroll's tactics and in enforcing her client's legitimate discovery requests. Thus, Plaintiff has provided documentation that is "sufficient to satisfy the court, or indeed a client, that the hours expended were actual, non-duplicative and reasonable . . . and to apprise the court of the nature of the activity and the claim on which the hours were spent."In the Matter of Schiff, 684 A.2d 1126, 1131 (R.I. 1996).[14]
As indicated previously, Mr. Carroll appeared on June 25, 2004 on Plaintiff's Amended Motion for Sanctions. At that time he repeated his objection that the claims of privilege were complete and made in good faith. Through counsel, Mr. Carroll also cross-examined Plaintiff's attorney, Laura Harrington, regarding the basis of the expenses she incurred in bringing the motion to compel production. Ms. Harrington testified, inter alia, that a portion of the claimed hours were spent in reviewing Mr. Carroll's most recent privilege logs, cross-referencing these against previous logs, and cross-referencing them against documents produced by Mr. Carroll. Notably, Mr. Carroll's attorney observed that Ms. Harrington would have been required to review the documents and the log anyway and, thus, that these expenses were not incurred as a result of his discovery abuses.
Despite Ms. Harrington's obligation to review the documents produced as well as the privilege log, Mr. Carroll's conduct required Ms. Harrington to conduct a specific review of the documents for the purpose of preparing for the motion.[15] Further, Mr. Carroll's failure to initially comply as well his submission of numerous and inadequate logs necessitated much more time and attention to the task; Ms. Harrington had to review several privilege logs and documents produced only in increments — and only when Mr. Carroll was faced with one of Plaintiff's motions to compel or one of the hearings on this matter — without the benefit of assuming that opposing counsel was fully cooperating in a good faith attempt to comply with the discovery rules. Mr. Carroll should not benefit from these additional burdens which he placed upon Ms. Harrington's task and Plaintiff should not incur the expenses thereof.
 Conclusion
For the foregoing reasons, the Court finds that an award of expenses, including attorney's fees, pursuant to S. Ct. R. Civ. P. 11, 37(a)(4)(A) and 26(f) is just. Plaintiff has met her burden of proving that the 24.8 hours claimed are actual, non-duplicative, and reasonable. Schiff,684 A.2d at 1131. This Court thus grants Plaintiff's Motion and assesses sanctions against Mr. Carroll, personally, in the amount of $4,340.00, representing 24.8 hours of attorney's fees and $132.00 for transcripts submitted in support of the motion for sanctions.
Mr. Carroll is ordered to pay the aforesaid fees and costs within 30 days and to provide the Court with an affidavit of compliance upon making such payment.
Mr. Carroll is further ordered to deliver a copy of this decision to his clients in this case, their risk managers and insurers within 30 days and to provide the Court with an affidavit of compliance upon doing same.
Counsel shall prepare an appropriate order for entry.
[1] Numbers 1 to 4 requested copies of the index and table of contents
of the "Nursing Standards of Care Manual" and the "Nursing Practice Manual" as these documents, used by Women and Infants, existed at the time of the alleged injury in 1999 and as they existed on the date of the request for production. Despite the fact that the Complaint alleged the negligence of defendant doctors as well as the negligent supervision by Women and Infants, Mr. Carroll objected — without explanation — on the grounds that the documents "if they are in existence" were not relevant in that they "would not lead to admissible evidence." Further, Mr. Carroll asserted that the requests were harassing because they were "broad and vague," again without explanation. (Almost 5 months later, on September 8, 2003, — after various extensions and delays — Mr. Carroll provided Plaintiff with the 1999 "Nursing Standards of Care Index" and with a document entitled "Patient Care Standards of Care" (2001-2004). Women and Infants denied the existence of a "Nursing Practice Manual"). On the same grounds, Women and Infants objected to requests 8 and 9, which sought copies of the 1999 and current "Women Infants Hospital Index of Nursing Policies and Procedures." (Women and Infants supplemented its response on September 8 with a "Nursing Policy and Procedure Index" (1999) and a "Patient Care Policy and Procedure Index" (2001-2004)).
Numbers 10 and 11, respectively, sought "any and all policies pertaining in any way to the role of the resident during surgical procedures at [Women and Infants]" and "any and all policies of [Women and Infants], in any department, pertaining in any way to obtaining patient consent for a surgical procedure." While originally objecting that those requests were harassingly broad and "not limited as to time," Mr. Carroll supplemented these responses with a document entitled "Resident Responsibility on Surgical Cases" and two 10 page policies relating to patient consent.
Requests 13 and 14, respectively, sought a list or index of "all patient education materials approved for patient uses at [Women and Infants]" in 1999 and as of the date the requests were propounded. While Mr. Carroll originally objected that the requests for such lists or indexes were overly broad, harassing, and irrelevant, he later responded that the indexes did not exist and supplemented with reference to its interrogatory answer #14, which provided informational documents relating to vaginal hysterectomy and certain other issues related to plaintiff's alleged injury.
[2] The proper rule for an award of fees upon a successful Motion to Compel is S. Ct. R. Civ. P. 26(f). D'Amario v. State, 686 A.2d 82, 85
(R.I. 1996). Sanctions, including attorneys fees, may also be awarded pursuant to Rule 37.
[3] Rule 26(f) requires that at least one attorney of record sign every discovery request, response, or objection, and states in relevant part that:
 "The signature of the attorney . . . constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, the request, response, or objection, is:
 (1) Consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.
 (2) Not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."
In the event of a violation, the rule provides for "an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including reasonable attorney's fees," either upon motion or the court's own initiative. Id.
[4] The Court ultimately determined that the several pages of Surgical Skills Evaluation were, indeed, covered by the peer review privilege and should not be produced. Nevertheless, the number of documents for which privilege had been unjustifiably claimed exceeded 100.
[5] For example, in each of the defendant's Interrogatory Requests, number 3 asked:
 "If you, your attorney or anyone acting in your behalf have knowledge of any statements, reports, voice recordings, medical records or other transcriptions of any kind relating to this incident, the damages relating to same, and/or the allegations regarding the same, state the name and address of the person giving it, the date given, the name and address of the person taking it, the name and address of the person presently having possession of it and a description of it."
Plaintiff referred defendants to "medical records produced in response," and stated that "[t]here are no other statements of which I am aware." In the several motions, Mr. Carroll, through his associate, argued that Plaintiff's answer was incomplete, and sought an itemization of these records.
[6] Plaintiff also informed the Court that Mr. Carroll had also provided her with 50 pages of documents that were not previously made known to Plaintiff and, thus, were never claimed as privileged. (Tr. at 14-15 (Jun. 7, 2004)). Plaintiff questioned Mr. Carroll's intent and/or good faith in conducting a reasonable inquiry into the existence of these and other potential documents prior to objecting to their production.
[7] S. Ct. R. Civ. P 26(f)(1) provides that an attorney's signature constitutes a certification that the objection is "consistent with these rules. . . ." and it allows for sanctions for violations of the certification requirements. Logically, "these rules" include Rule 26(b)(5). If Rule 26(f)(1) were not
interpreted to allow a court to award fees for a party's complete and utter failure to provide an objection inthe form required by Rule 26(b)(5), Rule 26(f)(1) would be all but meaningless. Such an interpretation would fly in the face of the plain language of the Rule and, in fact, would require a motion to compel for the Rule to have any definite effect. A party would thereby be permitted to delay compliance with a valid discovery request by asserting that the materials may be privileged and then awaiting a motion to compel — precisely the practice that is at issue in the instant case.
[8] As was done in the end but after enormous waste of time and effort on the part of Plaintiff's counsel, Mr. Carroll, Mr. Carroll's associate and the Court.
[9] Only where a request seeks a specific type of document that is entirely privileged will a blanket objection be acceptable. Cf. D'Amario, 686 A.2d at 86. Although, in D'Amario, our Supreme Court did state that where a claim of privilege is made the objecting party need not first ascertain the existence of the documents, that case dealt with a request for a specific document, and not for a defined category of documents, as here. Further, the Court noted that where the objection is not well grounded, sanctions are appropriate. 686 A.2d at 86.
[10] In fact, Rule 26(b)(1) states that "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved . . ." S.Ct.R. Civ. P. 26(b) (1).
[11] As to the unobjected-to requests for production and interrogatories, Mr. Carroll provided no response within the time period provided by the Rules of Civil Procedure, instead seeking various extensions of time; although, to his credit, he did so via authorized means. Only upon Plaintiff's exhaustion with these delays, and her corresponding Motion to Compel, did Mr. Carroll begin to provide any meaningful discovery.
[12] A party faced with a seemingly Herculean task of production is obligated to seek an extension of time, either by stipulation or via a formal motion, and maynot simply posit a baseless objection or unsubstantiated privilege with the intent of supplementing the answer later. This practice inherently creates a high potential for abuse as is illustrated by the instant case. It creates the possibility that discoverable material will be withheld if and when the responding counsel realizes that no motion to compel is forthcoming and, thus, abandons whatever intent he may have had to supplement the response. And, while it is easy to place the blame for this result on the party seeking the discovery, to do so is not only in violation of the express Rules, — which require forthright answers, good faith objections, and supported claims of privilege, — but is also inconsistent with the liberal spirit behind them, i.e., to secure "the fullest possible knowledge of the issues and facts before trial." Hickman v. Taylor,329 U.S. 495, 500, 91 L. Ed. 451, 67 S. Ct. 385, 388
(1947).
[13] See An Open Letter to Rhode Islanders From theDoctors of Rhode Island, Rhode Island Medical Society, Warwick Beacon, 1/23/03.
[14] Ms. Harrington provided documentation — in the form of an Invoice to plaintiff Donegan — showing an actual expenditure 22.8 hours as of the date of the affidavit and an anticipated 2 hours of time needed to appear at the final hearing and argue the motion.
[15] Ms. Harrington attributes 4.5 hours to this task, totaling $787.50 in attorney's fees.